## O'BRIEN *vs.* PERRY.

1. Under the third section of the act of 1832, persons who had claims of a certain class under France or Spain, to land upon which they were settlers and housekeepers, might have a right of pre-emption, if they would relinquish their claims.   A party claimed a town lot on which he resided, and other lands adjoining.   The town lot was confirmed in 1825, and in 1834 he relinquished his claim and demanded his pre-emption of the other lands under the act of 1832 *Held*, that he was a settler and housekeeper on the land of which he claimed pre-emption.

2. But the right of pre-emption did not depend on actual residence and housekeeping in the case of a person whose claim under a Spanish or French grant was still undetermined.

3. Where a person, whose right of pre-emption was founded on his relinquishment of an undetermined claim under France or Spain, has entered the land according to the act of 1832, and the Land Office has cancelled his entry and issued a patent to another person for the same land, the patent and the cancellation of the entry are both void.

4. In the State courts of Missouri, when a suit at law is brought by a patentee, the defendant may set up his prior equitable title as a bar.

This was a writ of error to the Supreme Court of the State of Missouri.

The action was brought in the Circuit Court of Washington county, Missouri, by John O'Brien against Eliza M. Perry and others.   The plaintiff's petition sets forth that he was legally entitled to the possession of the east fractional half of the southeast fractional quarter of fractional section 15, in township 37 north, of range 2 east, in the county of Washington, Missouri, containing 58 54-100 acres, into which the defendants unlawfully entered and held him, the plaintiff, out of possession.

The defendants in their answer deny that the plaintiff is entitled to the possession of the land, aver their own title, and give a detailed history of it.

The cause was tried by the court without a jury, and after

the evidence and arguments thereupon were heard, the court found the facts as stated in the opinion of Mr. Justice *Nelson*, and upon these facts found, as a conclusion of law, that John Perry, under whom the defendants claimed, by virtue of his waiver and relinquishment, was entitled to a pre-emption for the land in controversy; that the cancellation of his certificate of entry was illegal and void, and therefore judgment was given for the defendants.

The cause went to the Supreme Court of the State by appeal, where it was reviewed and the judgment affirmed, when this writ of error was sued out by the plaintiff.

*Mr. Noell,* of Missouri, for plaintiff in error.

1. John Perry, under whom defendants claim, never was in a condition to claim as a pre-emptor under the act of July 9, 1832, not being a *housekeeper residing on the land, and not having an unconfirmed claim.*

2. There was no proof that the land embraced in Perry's claim was ever reserved from sale. The report of the register and receiver is no legal proof of the fact.

3. The proof of pre-emption, certificate of entry, and patent of the plaintiff, made out a clear legal title, upon which he ought to have recovered.

4. The land was not reserved from sale. Perry's claim under Basil Valle was confirmed under the act of 26th May, 1824, the 4th section of which embraced the village of Mine au Breton. The act of July 9, 1832, (sec. 3,) expressly provides that the lands embraced in the 2d class shall be subject to sale as other public lands; those embraced in the 1st class are reserved, and are all that are reserved.

5. The patent itself is presumed to be valid. All the prerequisites to its validity are to be presumed, and the contrary cannot be shown by any other means than by proof that it issued contrary to law. *Polk* vs. *Wendall,* (9 Cranch;) *Bognell* vs. *Boderick,* (13 Peters;) *Minter. et al.* vs. *Crommelin,* (18 How., p. 87.)

6. Under the statute laws of Missouri the plaintiff was entitled to recover upon his right of pre-emption, although no

patent might have been issued. Revised Code of Missouri, 1845 and 1855, title Ejectment.

No counsel appeared for defendants in error.

Mr. Justice NELSON. This action was brought by the plaintiff, O'Brien, to recover possession of a part of section fifteen in township thirty-seven. He claimed title under a patent of the United States, dated May 4, 1854, which was founded upon a pre-emption certificate under the act of 1841, dated July 3, 1847. His possession or settlement began in April the same year.

The title which the defendants set up began as early as 1795, under Basil Valle, who settled upon the premises, which were situate at a place called Mine au Breton, in Missouri, and continued cultivating and improving the same down to the year 1806, when he sold and conveyed all his interest to John Perry, the ancestor of the defendants. In 1807, Perry, as assignee of Valle, presented the claim before the board of commissioners, enlarging it to six hundred and thirty-nine acres. No decision seems to have been made upon the claim till the meeting of the board in 1811, when it was rejected.

In 1825, William and John Perry, who had become the owners of the claim, had confirmed to them a town lot and out-lot of the village of Mine au Breton, lying within and constituting a part of the original tract of six hundred and thirty-nine acres, under the act of 1812 and the supplemental act of 1824. The dwelling-house of the Perrys was situate on this village lot.

In 1833 the claim was again presented to the board of commissioners, under the act of 1832 and the supplemental act of 1833, and further proof in support of it produced. No decision was made by the commissioners.

In August, 1834, John Perry, jr., who was then the owner, relinquished all right and title to the claim, by metes and bounds, including the whole tract of six hundred and thirty-nine acres, to the United States, and afterwards applied to the register and receiver to make his entry as purchaser of the tract under

*O'Brien* vs. *Perry*.

the act of 1832, which was permitted on the 26th of November, 1839, satisfactory proof of possession, inhabitation, and culti-vation having been furnished, and the purchase money paid. This entry was made under the direction of Whitcomb, the Commissioner of the Land Office; but, on an appeal to his successor by adverse claimants, the entry was cancelled on the 5th May, 1843, three years and a half after Perry's entry, and which decision was concurred in by the then Secretary of the Treasury.

Subsequently, in 1847, as we have seen, the plaintiff O'Brien was permitted to make an entry for a part of the same premises, and in 1854 a patent was issued to him.

Upon this state of the case and condition of the title, the court below held that, by virtue of the waiver and relinquish-ment of his claim under the act of 1832, Perry became thereby entitled to a pre-emption of the land relinquished, and that the subsequent cancellation of his entry by the Commissioner was contrary to law, and void.

By the first section of the act of 1832, a board of commis-sioners was appointed to examine all unconfirmed claims to land in the State of Missouri, theretofore filed in the office of a recorder, founded upon incomplete grants, &c., under the authority of France or Spain, prior to the 10th March, 1804, and to class the same so as to show, 1, what claims, in their opinion, would have been confirmed according to the laws, usages, and customs of the Spanish government and the practice of the Spanish authorities, if the government under which the claims originated had continued in Missouri; and, 2, what claims, in their opinion, are destitute of merit in law or equity under such laws, usages, and customs, and practice of the Spanish authorities.

The third section provided that, from and after the final re-port of the board of commissioners, the lands contained in the *second class* should be subject to sale as other public lands, and the lands contained in the *first class* should continue to be re-served from sale as theretofore, until the decision of Congress upon them, provided that actual settlers, being housekeepers upon such lands as are rejected, claiming to hold under such

rejected claim, or such as may waive their grant, shall have the right of pre-emption to enter, within the time of the existence of this act, not exceeding the quantity of their claim, and which in no case shall exceed six hundred and forty acres, including their improvements.   And it is made the duty of the Secretary of the Treasury to forward to the several land offices in said State the manner in which all those who may wish to waive their several grants or claims, and avail themselves of the right of pre-emption, shall renounce or relinquish their said grants.

In the instructions to the board of commissioners by the Commissioner of the General Land Office, under date of 2d November, 1832, he observes, that this 3d section of the act above recited provides that actual settlers, being housekeepers at the date of the act, upon such claims alleged and filed in the mode specified in the first section, as are rejected, and who claim to hold under such rejected claim, and also, *that all claimants who may relinquish to the Government claims of the characters* designated in the first section, prior to any decision thereon by the board, shall have the right of pre-emption.   He also directs, that the recorder furnish to the party relinquishing a certified copy of his relinquishment, which shall be evidence of his right to the pre-emption privilege intended to be conferred by the act.   The supplementary act of March 2, 1833, extended the provisions of the act of 1832 to all claims for donations of land in Missouri, held in virtue of settlement and cultivation.   This supplementary act embraced the class of claims to which the one in question belongs.   As the relinquishment was made by Perry in conformity with the third section of this act of 1832 and the instructions of the Secretary of the Treasury, it is difficult to see any well-founded objection to his right of entry of the land as a pre-emptor, which was permitted by the register and receiver upon satisfactory proof of inhabitation and cultivation on the 26th November, 1839.   Indeed, according to the instructions from the Commissioner of the Land Office, the certified copy of the relinquishment would seem to be sufficient evidence of the right of pre-emption, even without further proof.

But this entry was cancelled on the 5th. May, 1843, by directions of the then Commissioner of the Land Office, and which raises the principal question in the case. As has already appeared, William and John Perry, who then owned the claim, had confirmed to them, in 1825, a town-lot and out-lot at the village of Mine au Breton, embracing some eight or ten acres, under the act of 1812, and the supplementary act of 1824, and which were included within this claim. The dwelling-house and out-houses of the Perrys were situated on this town-lot, and, indeed, had been thus situated since the purchase from Basil Valle in 1806. The Commissioner held, that, upon a true construction of the third section of the act of 1832, no claimant was entitled to the right of pre-emption unless he was an actual settler, being also a housekeeper, on the land at the date of the act, and that the condition applied as well to the party relinquishing his claim to the Government as to him whose claim had been rejected. And as the town-lot, upon which stood the dwelling-house of the Perrys, had been confirmed under the act of 1812, he was of opinion it became thereby separated from the remaining portion of the claim, and, therefore, they were not settlers and housekeepers on the part entered in November, 1839. And this view being concurred in by the Secretary of the Treasury, the register and receiver were directed to cancel the entry of the Perrys.

Now, assuming the construction of the third section, as declared by the Land Commissioner, to be correct, and that the Perrys must prove they were actual settlers and housekeepers on the land at the date of the act, we think the conclusion arrived at not at all warranted. The confirmation of the title to the town-lot in 1812 did not, in any just or legal sense, affect their claim to the remaining portion of the land, or change the character of the settlement or inhabitation. For aught that appears, the occupation and claim continued the same after the confirmation as before, except that, being secure in the title to the town-lot, they were concerned only in their future efforts to obtain the title to the other portion of the land. The act of 1812 was a general act confirming town-lots, out-lots, &c., to the inhabitants of villages, and the argument would seem

to go the length of requiring the inhabitant to reject the confirmation of his village lot upon which his dwelling stood, or forfeit his right to a confirmation of the adjoining plantation, and of holding that his entire claim could not be confirmed in parts by two different acts.

But the conclusive answer to the objection of the Commissioner is, that Perry was an actual settler and housekeeper, on the land he relinquished to the Government, at the date of the act, as the deed of relinquishment embraced the village lot and dwelling-house, as well as the other portion of his claim; and although the entry was permitted only for the portion less the town-lot and out-lot, this was not the fault of the claimant, but that of the register and receiver, and cannot be justly used to his prejudice.

We have thus far assumed that the construction of the third section of the act of 1832 by the Commissioner, at the time of the cancellation of the entry of Perry, was correct, and have endeavored to show that the conclusion arrived at upon his own premises was erroneous, and afforded no justification for setting aside the entry made under the direction of his predecessor.

But this construction differed from the instructions of the Department at the time of the passage of the act, and which were furnished to the land officers, to guide them in its execution. As we have already said, that construction dispensed with the necessity of requiring the claimant to prove that he was an actual settler and housekeeper on the land, in all cases of claims pending before the board of commissioners, and undecided. The rejected claims were declared to be public lands, from the time of their rejection by the board; and, of course, no relinquishment was necessary to vest the title in the Government. The claimants were then in the condition of those who had no claim on the bounty of the Government, except as actual settlers on the land, which furnished a meritorious ground of right to a pre-emption. But the case of claimants whose claims were still under consideration and undetermined was altogether different. They might still be confirmed; and, in that event, the Treasury would derive no benefit from them.

*O'Brien* vs. *Perry.*

Congress, therefore, proposed to this class, that if they would relinquish their claims to the Government, they should have the right to enter the lands at the minimum price, in preference to all others.    This was the inducement held out to them to relinquish their claims.    The Government had no pecuniary interest, so far as the pre-emption right was concerned, after the relinquishment, whether given to the claimant or to some subsequent settler.    The minimum price was all it could receive for the land.    The proposal was a compromise, offered to this class of claimants.    Actual settlement and housekeeping on the land, at the time of the passing of the act of 1832, were not essential prerequisites of their claims before the board as Spanish claims; they depended upon the settlement right, under the act of 1807, and subsequent acts relating thereto.

Without pursuing this branch of the case further, we are entirely satisfied that the Commissioner of the Land Office erred in cancelling the entry of Perry, made in 1839, and that it was contrary to law, and void, as was also the issuing of the patent to O'Brien, upon his subsequent entry for a part of the same land in 1847.    This was so held in *Lyttle* vs. *The State of Arkansas*, (9 How., 314,) and in *Cunningham* vs. *Ashley*, (14 ib., 377;) see, also, *Minter* vs. *Crommelin*, (18 How., 87.)    It is true, in the first two cases, bills in equity were filed in the court below by the persons claiming under the pre-emption right to set aside the patent in one of the cases, and a location, which operated to pass the legal title in the others.

But in the present case, which comes up from a decision in the Supreme Court of Missouri, though the action was at law by the patentee, to recover the possession, according to the practice of that court, it is competent for the defendant to set up a prior equitable title in bar of the suit, founded upon the legal title to the premises in dispute.

*Judgment affirmed.*