## QUINNEY vs. DENNEY.

A member of the tribe of Stockbridge Indians, to whom land was allotted under the act of congress of March 3d, 1843, [5 U. S. Stat. at Large, 645,] took by such allotment an equitable title to the land, which he could convey by deed, and the patent subsequently issued would enure to the benefit of his grantee.

A deed of land in this state executed in 1845, was effectual to pass the grantor's title, although not witnessed or acknowledged.

APPEAL from the Circuit Court for *Calumet* County.

Ejectment, for lot 49 in the town of Stockbridge, in said county. The premises were allotted to the plaintiff in 1843, in pursuance of the act of congress approved March 3d of that year, and a patent was issued to him in 1860. The defendant claimed under a deed from the plaintiff to one James Joshua, executed in 1845. This deed was not put in evidence; but the plaintiff, as a witness in his own behalf, testified that he executed such a deed; that it was a quit-claim deed, and was not acknowledged before any person authorized to take acknowledgments. The defendant proved his chain of title from said Joshua, beginning with a deed from him to one Daniel Whitney. The court found the facts accordingly, and found also from the evidence that " by the laws of the Stockbridge tribe of Indians, they were authorized to convey lands to one another, and such lands descended to the heirs of such persons, but they were not authorized to convey their lands to any person except a member of the tribe," and that the plaintiff and Joshua were members of said tribe at the time they executed their respective deeds of the premises. As a conclusion of law, the court held that the plaintiff was entitled to recover, and rendered judgment in his favor, from which the defendant appealed.

*Finches, Lynde & Miller,* for appellant.

*R. P. Eaton,* for respondent, argued that no title vested in the allottees under the act of congress until the patents were issued; and that if the title had been in the plaintiff in 1845, it would not have passed by the pretended quit-claim deed, because it was not witnessed or acknowledged.

*By the Court,* COLE, J. The principal and controlling question in the case is, whether the respondent, as allottee under the act of congress of March 3d, 1843 (see 5 U. S. Stat. at Large, p. 645), took such an estate in the premises allotted to him as he could convey by deed, or whether his conveyance to James Joshua in 1845 was void for want of an assignable in-

terest in the grantor.    On the part of the respondent it is contended, that the deed to Joshua passed no title, and that in fact the allottee under the act took no assignable interest in the land until the patent issued to him in 1860.    We deem this an erroneous view of the effect of the act of congress.

By the first section of this act, a quantity of land was reserved for the use of the Stockbridge tribe of Indians, and it was expressly declared that the same " may be partitioned and divided among the different individuals composing the said tribe of Stockbridge Indians, and may be held by them separately and severally in fee simple, after such division shall have been made in the manner hereinafter mentioned."    The second section provides a board of commissioners, whose duty it was to make a just and fair partition and division of said lands among such members of said tribe as, by the laws, customs and regulations of the tribe, might be entitled to them.

The third section provides the manner of electing the commissioners.    The fourth section prescribes how the division shall be made by the commissioners.    The fifth section required the commissioners to make a report of their proceedings, with a map showing the divisions and partitions made by them.    The sixth section required the commissioners to make three copies of their report and of the map accompanying the same, one copy of which was to be filed in the office of the secretary of the territory of Wisconsin ; one in the office of the clerk of the county within which the lands were situated ; and, in the language of the act, " the other shall be transmitted to the President of the United States, who shall thereupon cause patents to be issued to the several individuals named in said report, for the lands so apportioned to them respectively, by which the said persons shall be authorized to hold the said land in fee simple to themselves and their heirs and assigns."    By the seventh and last section of the act, the disposition of the report and map was to be made before the 1st of January, 1844.    It appears that all the requirements of this law were complied with,

up to the issuing of the patent for the lands by the President.

Now we are of the opinion that this act created or gave to the allottee an equitable estate or title in the land allotted to him, which could be sold and transferred by deed, and that when the patent subsequently issued to him, it enured to the benefit of his grantee.   We think that this position is abundantly sustained by the following authorities cited on the brief of the counsel for the appellant:   *Strother v. Lucas*, 12 Peters, 410; *Stoddard v. Chambers*, 2 How. (U. S.), 284; *Grignon v. Astor*, id., 319; *Les Bois v. Bramell*, 4 id., 439; *Marsh v. Brooks*, 8 id., 223; *Landes v. Brant*, 10 id., 348; *The United States v. Brooks*, id., 442; *French v. Spencer*, 21 id., 228; *Berthold v. McDonald*, 22 id., 334; *Doe v. Wilson*, 23 id., 458; *Crews v. Burcham*, 1 Black, 352; *Challefoux v. Ducharme*, 4 Wis., 554.

· |*Doe v. Wilson*, and *Crews v. Burcham*, involved questions of law and fact quite analogous to those arising upon this record ; and when the provisions of the treaty are considered (see Treaty with the Pottawottamies, Oct. 27, 1832, 7 U S. Stat. at Large, Indian Treaties, p. 399), under which those cases arose, they will be found to be very strong authorities in support of the conclusion already announced.   And the position that the allottee took under the act of March 3d, 1843, an equitable title to the land allotted to him, is likewise strongly fortified by the preamble to the treaty made with the Stockbridge tribe of Indians Nov. 24th, 1848 (9 U. S. Stat. at Large, p. 955), and by the 14th article of the subsequent treaty with the same tribe, February 5th, 1856 (11 U. S. Stat. at Large, p. 663-666.)

The circuit court found in this case, among other things, that, sometime in the year 1845, the respondent exchanged his right in and to the land allotted him with one James Joshua (through whom the appellant derives title), for other lands in the reservation, and gave Joshua a writing therefor in the form of a quit-claim deed, but which was not acknowledged.   The bill of exceptions does not profess to contain all the evidence, and we therefore must assume that this finding was fully support·

ed by the proof on the trial. It is objected that the respondent's interest in the land would not pass under this quit-claim deed, because it was not witnessed and acknowledged. This objection is overruled by *Myrick v. McMillan*, 13 Wis., 188, where a similar question was presented.

It follows from these views that the judgment of the circuit court must be reversed, and a new trial ordered.