Stirman et al. vs. Cravens et al.

STIRMAN et al. vs. CRAVENS et al.

1. CONVEYANCE: *Effect of, on unacknowledged and unattested deed.*
An instruction that the jury must disregard a deed under which the defendant was placed in possession and claimed title, unless they were satisfied that it had been executed in the presence of two witnesses, or acknowledged before witnesses or a competent officer, was erroneous, for if the deed conveyed no legal title it conferred an equitable interest under which he was entitled to hold the possession.

2. BILL OF EXCEPTIONS: *Instructions need not be embodied in.*
The instructions need not be embodied in the bill of exceptions; if they are so marked and referred to that they may be identified, it is sufficient.

APPEAL from *Washington* Circuit Court.

Hon. E. D. HAM, Circuit Judge.

*W. Walker*, for appellant.

*U. M. Rose, contra.*

WILLIAMS, SP. J. Appellees brought an action of ejectment in the Washington circuit court, to the April term,

1873, for a lot of ground and a two-story frame-store thereon situated in the town of Fayetteville. Appellant, Stirman, in a separate answer, denied appellees' title and right of possession, and set up specially a claim of title as administrator of James E. Trott, deceased, who died seized of the lot, etc., exhibiting his letter of administration. Appellant, Davidson, filed a separate answer, denying generally the allegations of the complaint. Appellants also filed a joint answer, setting up substantially the same defenses as they presented separately.

On the issues thus presented, the cause was tried by a jury, which rendered the following general verdict :

"We, the jury, do find that the said plaintiffs are the legal owners of, and well entitled to, the lot of ground described in the within complaint, and that the defendants wrongfully and unjustly detained the possession thereof from the said plaintiffs, for which we find $120 damage. We also find that the defendants are lawfully entitled to the said two story frame-building or store-room, occupying the front portion of said lot, and that the same belongs to James E. Trott's estate."

The jury also returned the following special finding :

1. That James W. Stirman, the grantor of plaintiffs' grantor, did not execute a deed in fee simple to the lot in controversy to James E. Trott, in 1866, or at any time prior to the execution of the deed from said Stirman to his mother, Catherine Stirman.

2. That said James E. Trott has since died.

3. That E. J. Stirman was administrator of the estate of James E. Trott, deceased, at and before the commencement of this suit.

4. That the house mentioned in plaintiffs' complaint is now, and was at the time of the commencement of this suit, still standing on said lot.

5. That said house was erected by said Trott before the execution of the deed from James W. Stirman to his mother, the plaintiff's grantor.

6. That the value of the house at the time it was built was $2,200.

7. That the present value is $1,000.

8. That Trott's legal representative was in possession of the premises at the time of the execution of said deed, read in evidence, from James H. Stirman, and Catherine, his wife, to plaintiffs.

9. That Trott left a wife and child surviving him.

On this verdict, judgment was rendered for plaintiffs for the lot, except that portion covered by the building, and damages assessed.

Pending the trial, appellants excepted to several rulings of the court, and at its conclusion, moved for new trial, setting out four distinct grounds for the motion :

1. Excessive damage.

2. Amount of recovery.

3. Verdict not sustained by sufficient evidence, and contrary to the evidence.

4. Because the court erred in the instructions given to the jury, and in permitting illegal evidence to go to the jury.

This motion the court overruled, and appellants presented their bill of exceptions, which was duly signed and made a part of the record, and by which it appears that, both parties admitted that James W. Stirman, under and from whom, both parties claim to have derived their respective claims to title, was the original owner in fee of the ground in controversy.

That defendants (appellants) were in possession of the premises at the time the suit was commenced, and refused to surrender possession to plaintiffs, after demand in writing.

That James E. Trott died intestate on March 24, 1870, leaving a wife and child surviving.

That defendant, Erasmus J. Stirman, was, on the 28th of April of that year, appointed administrator of his estate, and took the administration.

That on March 9, 1872, James W. Stirman, by deed, since duly acknowledged and recorded, as prescribed by law, for the consideration of $1, and the further consideration of the love he bore his mother, Catharine W. Stirman, granted, bargained, and sold unto her, all the right, title and interest which he had in and to said lot of ground, in plaintiff's complaint mentioned, with all and singular the appurtanances thereunto belonging, except the two-story house occupying the front portion of said lot, and belonging to the estate of James E. Trott, deceased.

That, subsequently, C. W. Stirman and James H. Stirman, her husband, by deed with general warranty of title, dated June 18th of the same year, since duly attested, acknowledged and recorded, for the consideration of $1,000 therein expressed, bargained, granted, and sold to plaintiffs the lot in controversy.

That the demand made for possession was after the execution of the latter deed, and before suit was brought. That the rents were worth $120, between the time of demand and the day of trial.

The defendants introduced defendant, Erasmus J. Stirman, as a witness, who stated that in the latter part of the year 1869, or the early part of 1870, he saw a deed to the lot of ground in controversy from James W. Stirman to James E. Trott, since deceased. That said Trott took it out of his safe and showed it to him; that it was in the handwriting of William H. Brooks, who has since died; that it was signed by James

W. Stirman, and had a scroll by way of a seal, which was at the end of his signature, and that a certificate of acknowledgment was written under the signature.

That he did not recollect the name of the officer whose name was subscribed to the certificate, and cannot say whether the deed was attested by subscribing witnesses; that he was under the impression that plaintiff, P. R. Smith, formerly clerk of the court, was the officer whose name appeared to the certificates; but of that he was not certain. That he distinctly recollects that the consideration expressed in said deed was $1,000. That he saw the deed at the time it was shown him, and handed it back to Trott, who placed it in his safe in his store, where he usually kept his papers. That he has never seen the deed since. That soon after he administered on said Trott's estate, he made diligent and thorough search in Trott's safe, and everywhere else he thought it likely to be found, and has been unable to find its whereabouts, or as to how it was lost, mislaid, or destroyed.

That James W. Stirman was a clerk in Trott's store, before and at the time of his death; and during his last illness, James W. Stirman and his father, James H. Stirman, had charge of his store, and each had a key to said safe. That after witness became administrator, he offered to buy the lot for Mrs Trott at $800, from James W. Stirman.

Defendants then called James W. Stirman, who testified that in the year 1866, he was clerking for James E. Trott and William H. Brooks; that the house they were then occupying was too small, not suited to their business (mercantile), and it was proposed to put up a store on the lot in controversy. But Brooks refusing his consent to build upon it unless Trott obtained a title, to satisfy Brooks, Trott solicited witness to make a deed, and assured him that his object was to satisfy Brooks, and if he executed a deed to it to him, he would never

have it recorded; that having the utmost confidence in said Trott's honesty and integrity, he consented to execute the deed he desired. That shortly afterwards, said Brooks, who has since died, presented an instrument of writing to him for execution, saying : Here is that deed. That he went to the desk in said store and signed it, and that Brooks picked it up and walked with it in his hand to where said Trott stood, farther up the counter, and that he never laid eyes upon the instrument he signed afterwards. That he did. not know whether it was attested by a subscribing witness, and did not. recollect of ever having acknowledged his execution.

But at the time of subscribing his name to it, he understood it to be a deed to said lot; that he never read the instrument or heard it read ; that he was pretty certain that no one was present when he signed the document, besides Trott, Brooks, and himself. That Trott never paid him any part of the purchase money expressed in said document, as he supposed, and that the same was conveyed for the purpose before stated by him and without consideration ; that he could not swear that said document was not acknowledged ; that after he signed it Trott and Brooks built the two story frame store-house now on the lot, and moved into it in 1866, and occupied it until they dissolved partnership in 1867 or 1868 ; and since then, Trott occupied it until his death. That the house was built at the cost and expense of Trott. That the understanding between himself, Brooks, and Trott was, that they were to pay him ground rent for the lot and a warehouse that he had put up at the end of the store, $15 per month.

Plaintiff introduced Charles S. Haufman, who testified that in the last days of the year 1866, or the first days of 1867, he happened in at Trott's store, when Trott, after telling him that he and Brooks had dissolved partnership, showed him a deed to the lot his store was on, from James W. Stir-

man; that he looked at it, and recognized the handwriting and signature of James W. Stirman to it; but that he did not recollect seeing any signature thereto as witnesses, and thought there were none. That he had no recollection of seeing a certificate of acknowledgment on the deed; that there was no other writing under that above the signature of said James W. Stirman on said deed of which he had any recollection.

Plaintiff introduced again James W. Stirman as his witness, who testified that he remembered signing the deed, but had no recollection of acknowledging it at the time it was signed; that if he had acknowledged it afterwards, he would have recollected it. No person was present when the deed was signed, except Brooks and himself. Trott was in the house towards the other end of the counter. If the deed had been acknowledged when signed, he would have remembered it. There was a consideration expressed, what amount he did not recollect; had never said that there was a consideration expressed in the deed of $800 or $1,000.

Defendant proved the value of the house to be $2,200.

Plaintiffs then proved by C. W. Stirman, against defendant's objection, that a long time before Trott was married, which was on September 17, 1867, he told her that he had no title to the lot; that the deed from her son had never been acknowledged or recorded, and should never rise in judgment against her, and urged her to take a deed to said lot from her said son. That in that same conversation, Trott spoke of forming a partnership with him; that Trott also said the deed amounted to nothing. She, Mrs. Stirman, further testified that in procuring the deed from her son, she acted upon and was influenced by said Trott's advice; that such a thing had never entered her head before.

Defendant then produced and read in evidence, against plaintiff's objections, a deed of mortgage in fee upon the pre-

mises in controversy, dated July 22, 1867, executed by said Trott to J. C. Carter, to secure the payment of $3,000, which was duly acknowledged and recorded in the proper office, and proved that said mortgage was paid off in 1870. Defendant also proved by plaintiff, Cravens, that he and his co-plaintiff executed their notes to Mrs. Stirman, one of their grantors, for the payment of the purchase money for said premises, and has paid them, in money and goods, about $200 ; that his grantors are insolvent.

They also proved by James W. Stirman, that the reason he excepted the house in his deed to his mother was, because he considered that it belonged to Trott's estate.

This being all the evidence, the court gave a long special charge to the jury. The defendants below objected to the testimony of Mrs. Stirman, and their objection being overruled, they excepted. They also excepted, generally, to the charge of the court. One of the clauses of this charge is as follows : " I charge you that, in order for the deed made by James W. Stirman to James E. Trott, to have the effect of conveying to said Trott the legal title to said town lot in question, you must be satisfied that said deed was executed in the presence of two witnesses, or acknowledged by the said grantor in the presence of such witnesses, or was duly acknowledged before some court, or officer of this state, authorized by the laws of this state to take and certify the same, and unless you are satisfied that said deed was thus executed, you should disregard the title so acquired by said Trott to said real estate, by virtue of the deed, the contents of which have been testified to before you."

This clause of the charge, in effect, withdraws from the jury the consideration of this deed for any purpose, either as evidence of legal title or equitable, which, as we shall hereafter see, might have been taken as a writing within the statute of

frauds, which would create a perfect equitable title, and would
have made James W. Stirman the holder of the naked legal
title in trust, and if the jury should have disbelieved the tes-
timony of Mrs. Stirman and her son, even conceding its com-
petency, which it was their right to do, as judges of the
credibility of witnesses, and the weight of testimony, then it
would have been proper for the jury to have found generally
for defendants, and we cannot shut our eyes to the bearing
and effect of this charge, if erroneous.

The verdict in this case, as we may infer from the first
special finding, was mainly influenced by this clause of the
charge of the court above copied.  This fact will render it
unnecessary for us to enquire how far Mrs. Catharine W. Stir-
man's testimony might have been competent in detailing the
conversations had with Trott in his lifetime, or indeed whether
she be a competent witness at all, while her husband stands
bound by the warranty of their joint deed ; and whether that
interest was removed as to the wives of parties and persons
interested, by the constitution of 1868.   It will be equally
unnecessary for us now to inquire what legal significance is
to be attached to James W. Stirman's statements, tending to
prove a resulting trust in himself in the lots, or the effect of
the declarations of Trott to Mrs. Stirman as an *estoppel in pais.*
For when it is reasonably certain that a jury have been mis-
led by instructions, it is our duty to reverse, unless upon the
whole record the result is right, and as we cannot find, either
from the general verdict or special findings, that the jury
passed upon the credibility of either of these witnesses, so that
we could be justified in saying, if we so found the law, that
upon the whole record the verdict and judgment were right,
and affirm.   We therefore address ourselves to the only point
upon which the case turns : Does a deed, signed, sealed, and
delivered, accompanied with possession, pass title to real

estate in the absence of the attestation of subscribing witnesses or acknowledgment?

The first section of chapter 37, Gould's Digest, provides that land, etc., may be claimed, and possession transferred by deed without livery of seisin, etc. ; section 12 of the same chapter, which has more especial application to our registry system, of which it is a part, than to the question now before us, provides that deeds shall be executed in the presence of two witnesses, or acknowledged, etc. The latter section contains no negative clause confining or limiting the scope of the first section ; but by the use of the term deed, in both sections, impliedly recognizes the common law definition of a deed, a contract in writing under seal. As to the full definition of which, see 2 Wend. Black., 295 *et seq. ;* 2 Black. Com., 350 *et seq.* Blackstone says : " The last requisite to the validity of a deed is the attestation, or execution of it in the presence of witnesses, though this is necessary rather for preserving the evidence, than for constituting the essence of the deed. 2 Black. Com., 366; 2 Wend. Black., 307, being part of ch. 20 of 2d book. The statutes of the different states vary as to the formalities of executing a deed, and the decisions vary almost as much. In New York, by statute it was required expressly that a deed must be attested by at least one witness, or acknowledged by the grantor before a proper officer to render it effective against a purchaser and incumbrancer. 1 R. S. (Org.), 738, sec. 137 ; 2 Wend. Black., note to p. 307 ; all the New York decisions which we have been able to find go no further, and are like *Rozzer v. Avery,* 6 Barb., 65, and *Genter v. Morrison,* 31 id., 155, leaving the question as to whether the deed is good between parties undecided. In New Hampshire, one of the earliest decisions is *French v. French,* 3 N. H., 234, in which it is held that, under their statute, an unattested deed is not good as a statutory deed, but will pass

the title as a covenant to stand seized to uses, which use was executed and title vests by virtue of the statute of 27 Henry VIII., chap. 10, commonly called the statute of uses, which had been adopted in New Hampshire, as in our state, by the adoption of the common law and statute prior to the fourth year of James I. In Ohio, under their statute, an unattested deed has been held to pass equitable title. *Courcier v. Graham*, 1 Hamm., 331 ; *Patterson v. Pease*, 5 id., 190. In *Wiswall v. Ross*, 4 Port. (Ala.), 321, it is recognized without argument or comment, that a deed unattested passed no title ; but as the deed in that case was decided valid under a subsequent statute of Alabama, the passing dicta of the court in commenting is dropped without due consideration. In *Clark v. Graham,* 6 Wheat., 577, the supreme court of the United States construe the Ohio statute as their own courts had, holding that want of attestation prevented title from passing. The authorities, *pro* and *con.*, are fully collected by Mr. Washburn in his work on Real Property, vol. 3, p. 247. In South Carolina, in the case of *Alston v. Thompson,* 1 Cheves, 271, 272, it is held, under the statute of that state, that an unattested deed does not pass title either as a statutory deed or under the statute of uses, as a deed of bargain and sale, thus clashing with the case of *French v. French,* 3 N. H., 234; as the statutes of the two states are very similar, and it was admitted that the statute of uses was in force in South Carolina. In Kansas, it has been held that an acknowledgment has reference to the proof of execution simply ; title passes without it. *Gray v. Ulrich,* 8 Kan., 112. Held, substantially, the same way in Missouri, *Stevens v. Hampton,* 46 Mo., 404; *Bishop v. Schneider,* id., 472; *Ryan v. Carr,* id., 483. In Wisconsin it has been held that an attested unacknowledged deed passed title as between parties, under a statute which provides that the deed shall not be good without, etc. *Quinney v. Denney,* 18 Wis., 485 ; 13

id., 189; *McMahon v. McGraw*, 26 id., 614. Under the Kentucky statute it is held that title passes in such cases. *Fitzhugh v. Croghan*, 2 J. J. Marsh., 429.

Thus we return after a scout through the decisions of most of the states without finding anything but conflict. In some of the states, for instance in South Carolina, where it is held that a deed not executed as directed by the statutes does not pass title, great stress is laid upon the effect of allowing a deed to be secretly executed and real estate to be affected thereby. While we can see a great necessity of throwing such protection around testators in making wills to prevent undue influence, imposition and fraud, we see no reason for it in case of deeds, especially where no effect is given to them beyond the parties and privies, and those claiming under them having notice. This question, as applicable to deeds in fee, has never been decided in this state. In *Floyd v. Ricks*, 14 Ark., 294, this court decided that an unacknowledged deed passed title. It is true that there were two attesting witnesses. In the case of *Haskill v. Sevier*, 25 id., 154, this court decided that a deed of mortgage for real estate, which was not acknowledged as between the parties, passed title, notwithstanding the law regulating mortgages is, if possible, more rigid than the statute regulating conveyances. See Gould's Dig., ch. 117, sec. 1, which provides that mortgages shall be acknowledged.

In delivering the opinion of the court in that case, Mr Justice Walker, at page 159, says, speaking of this mortgage: "And after a breach of the conditions of the mortgage, by nonpayment of the debt, it became a legal title, so as to enable him to oust the mortgagor by ejectment."

Even if the deed, unaccompanied with possession, would not have conveyed title to Trott, either as a statutory deed, or by operation of the statute of uses upon it as a covenant of James W. Stirman, to stand seized to use of Trott, which we do not

decide, and even if with possession, the title was merely equit-
able, and not legal, still, being accompanied with possession,
did it not create an equity perfect and complete, which would
protect his possession, leaving out of view the testimony of
James W. Stirman and his mother, which we are not con-
sidering now?      Our statute of ejectment recognizes equitable
titles, such as certificates of entry, preëmptions, etc., as suffi-
cient evidence of title to maintain ejectment; what reason is
there for holding that the same metal which would make a
sword might not make a shield?

In *O'Brien v. Perry*, 1 Black, 132, the supreme court of the
United States, in construing a statute of Missouri, of which our
ejectment statute is a copy, held that a preëmption based upon
equities prior and better than the entry on which a patent was
issued, could be set up as a bar at law to an ejectment suit
based on the patent.    In *Brown v. Weast*, 7 How. (Miss.), 181,
the supreme court of Mississippi held that, where one pur-
chases lands with the money of another, and takes the con-
veyance, or has been paid the money for land and has not
conveyed, he is trustee of a satisfied trust, and neither he nor
his heirs can set up the legal title in an ejectment against the
beneficiary, citing *Hart v. Knot*, Cowp., 43, in which it is de-
cided that an estate in trust, merely for the benefit of the
*cestui que trust*, shall not be set up against him; anything shall
rather be presumed; and also citing 3 Burrows, 1901, where
the court said they looked upon it as a settled point, that the
formal title of a trustee should not, in an ejectment, be set up
against the *cestui que trust*, because from the nature of the two
rights the *cestui que trust* is to have the possession.    See 6
Peters, 432; 1 Tenn. 758; 2 Wend., 109; 7 id., 379; 6 Munf.,
38, 41; 11 J. R., 437; 1 How., 358; Perry on Trust, sec.
329.

In the case of *Trulock v. Taylor*, 26 Ark., 54, it was held,

construing section 116, civil code, that when the defense in ejectment was equitable, and there was no motion to transfer to the equity docket, the defense must be tried at law.

Trott, holding this deed, and being put in possession by James W. Stirman, had a right to the possession, whether his title was legal or equitable; for if equitable, James W. Stirman was the trustee of a satisfied trust; therefore the court erred in the above copied clause of the charge, and in not therein leaving the jury to determine the facts as to the relations of the parties, and whether, in view of all the facts, James W. Stirman yielded his rights of possession, if not his title. The registry laws were not intended to destroy the effect of the common law entry, as notice; it was intended merely to supply a fictitious substitute, applicable to unoccupied lands. Wherever one is in notorious pedal possession, he affects the whole world with notice of all claim and title he may possess, and nothing short of application to the tenant in possession, and denial or equivocation, or evasion by him, or something equivalent as to the nature and extent of his claim, whereby a subsequent purchaser may be misled, will avoid the effect of the notice which the presence of a claimant on land gives to all the world. There is nothing better settled. All the world are affected with notice of the claim and title of one in actual possession, for the reason all must know at their peril by what right he holds. If he inquires of the occupant he can learn the nature of his claim. If he fails to do so, the law will not excuse his negligence.

In the case of *Engles v. Byers*, 16 Ark., 547, Judge Walker, in delivering the opinion of this court, says: Defendant (Engles) had, in fact, entered upon the land so conveyed, and was in actual possession of the same before the judgment was obtained, and so continued " up to and at the day of sale," " and this was sufficient to effect the plaintiff with notice."

Stirman et al. vs. Cravens et al.

And this is absolutely the ruling in England and the states. We have no statute limiting the period within which deeds must be recorded. By our statute they are simply made void against purchasers and creditors without notice, leaving the question of notice to be regulated by the common law rules. Mr. Perry, in his late work on Trusts, in discussing this subject of constructive notice, after referring to registration and *lis pendens*, says : " Actual possession by the *cestui que trust*, or some person other than the vendor, is constructive notice to the purchaser that there is some claim, title or possession of the property adverse to his vendor, and this fact should put him upon inquiry, for if he had inquired he would have discovered the exact title and the equitable claims upon it. He therefore has constructive notice. Perry on Trusts, sec. 223. See also *Le Neve v. Le Neve ;* 2 Lead. Cases in Eq., 23, where the subject is fully discussed in notes.

Appellees contend here that the charge is not made part of the bill of exceptions. This is not correct. The Judge marked the instructions on the back as follows : " These are the instructions referred to in defendant's bill of exceptions. Signed, E. D. HAM, Judge."

The bill of exceptions refers to them as so marked and filed. Although it is better to embody the instructions in the bill of exceptions, we adopt the rule, "That is certain which can be made so."

The court erred in charging the jury, and for that error should have granted appellants a new trial.

Let the case be reversed and remanded to the circuit court of Washington county, with instructions to grant appellants a new trial, and proceed therein in accordance with law.

Hon. DAVID WALKER, J., did not sit in this case.