WILLIAM B. McCauslin, *et al.*, v. Thomas McGuire.

1. Tax Deed; *Subscribing Witnesses.* It is not necessary to the validity of a tax deed, or to make it *prima facie* evidence of title, that it be witnessed by more than one attesting witness: and *quære*, is it necessary that it be witnessed at all?

2. Tax Sale; *Purchase by County; Payment.* Where land has been bid off at a tax sale, by the county treasurer, for the county, it is not necessary that anything be paid at the time for the land.

3. ——— *Presumption; Payment.* Where a tax deed for land so bid off to the county recites that "the said county treasurer did, on the 6th day of October 1862, duly assign the certificates of the sale of the property as aforesaid, and all the right, title and interest of the said county to said property to Thomas McGuire," etc., without stating that McGuire, or any one for him, paid anything for said assignment, or for the property: *Held,* that it is not necessary that such a statement should be made, as it will be presumed that the certificate was *duly assigned,* and that. the assignee paid the amount required by law at the time of said assignment.

4. Certificate of Acknowledgment; *Sufficiency.* Where an officer, taking the acknowledgment of a deed, certifies "That before me, a register of deeds," etc., and then signs his name "L. J. T., Register of Deeds," *held,* that the certificate is sufficient, although the officer has not inserted his name in the body of his certificate.

5. Land Sold to County—*Tax Deed to Assignee.* Where land has, been bid off, at a tax sale, by the county treasurer, for the county and the tax-sale certificate has been assigned to an individual, a valid tax deed may be made to such individual on said tax-sale certificate.

6. Tax Deed—*Form of.* A tax deed need not be in the exact form prescribed by the statute, but the form should be so varied that the deed will in every case state the exact truth.

### Error from Jefferson District Court.

Action for partition of real property, brought by William B. McCauslin, Charles F. McCauslin, John Gregg, John W. Corwine, George Corwine, Christian Blaser, Ellen E. McCauslin, Harriet F. Millar, George B. Millar and Frank Millar, as plaintiffs, who claimed that they were the owners of the undivided one-half of a certain quarter-section of land. The

plaintiffs admitted that *McGuire*, the defendant, was the owner of the other one-half interest, but he claimed title in fee to the entire tract. · The tax deed under which defendant claimed title is set out in full in the opinion, *infra*. The district court, at the May Term 1873, found in favor of the defendant, "that the defendant was the legal owner in fee simple of all of said land, and that the plaintiffs had no interest in nor title to any part of said land," and gave judgment accordingly. The plaintiffs bring the case here on error.

*Keeler & Johnson*, for plaintiffs in error:

1. The tax deed under which defendant claims title is not duly witnessed, and is therefore not *prima facie* evidence, and was not admissible in evidence without proof *aliunde* that all the tax proceedings prior to its execution were legal and regular. (Comp. Laws 1862, p. 878, § 10.) It has only *one* subscribing witness. The statute referred to (which was in force at the time,) requires the deed to be "duly witnessed," and then gives a form for tax deeds, the blanks in which cannot be logically or grammatically filled without the insertion of at least *two* names as attesting "witnesses." The reasons for requiring "attesting witnesses" are, to give additional certainty that the execution is genuine, and to multiply the evidence by which that genuineness can be proved. Neither of these objects, nor any object whatever, is attained by having the officer who certifies the acknowledgment sign his name as a witness also. The whole object to be attained by his signature and witnessing is attained when he signs it officially; and there is no more sense nor reason in his signing again as a witness, than there would be in the same person signing his name twice, as a witness to a will, in order to satisfy the statutory demand for two witnesses. Hence we claim that, upon a rational construction of the statute, the deed is not witnessed at all.

But whether the officer is a competent attesting witness or not, the deed fails to comply with the statute, which requires.

"*witnesses.*" It is a well-settled principle that the courts cannot dispense with the regulations prescribed by statute to be observed in the execution of statutory power: *Young v. Dowling,* 15 Ill., 481; *Atkins v. Kinnan,* 20 Wend., 240, 249; *Bloom v. Burdick,* 1 Hill, 130, 140; *Sharp v. Speir,* 4 Hill, 76, 86; *Jackson v. Esty,* 7 Wend., 148; Blackw. on Tax Titles, 493.

2. The deed does not show that any consideration was ever paid for the sale certificate, or the assignment thereof. It is a substantial requirement of the statutory form of tax deed, that it shall show the amount paid into the county treasury by the tax-lien purchaser. Such payment is the real and substantial foundation of his lien or title. The statute forfeits the title of the owner of the land for the nonpayment of the taxes to any person who pays them in the manner prescribed, and the statute requires such payment to be shown in the tax deed. The recital in this deed, that the county treasurer bid the land off for the county, does not show nor imply any *payment,* because the statute did not authorize the county treasurer to pay anything as a bidder for the county. The statute, (Comp. Laws, 867, § 44,) provides that any person may become the purchaser of the certificate by paying into the county treasury the cost of redemption at that time; and this court decided, in *Guittard Township v. Marshall County,* 4 Kas., 388, and other cases, that "any person" means some other person than the county.

The omission to state in this deed that any such payment was made, leads to an absurdity in the latter part of the deed, where the county clerk says that he conveys the land in consideration of "said sum of $18.61 taxes," etc., "to the treasurer paid as aforesaid." No payment to the treasurer having been stated or referred to anywhere else in the deed, the conveyance is left without a semblance of consideration, and for aught that appears from the deed, the taxes, penalty and charges still remain due and unpaid upon the land.

3. The deed says this land was sold on the 7th of May, 1862, which, by reference to a calendar, is found to be Wednes-

day; and there is no averment in the deed that it was sold *at* any sale, or adjourned sale, begun and held on the first Tuesday in May. It is true that the insertion of the word "at" in a certain place would cause it to make such averment. But the court would have to exercise equity powers in order to reform the deed in that manner, which the court is not authorized to do, because courts of equity even are not allowed to cure defects in the execution of statutory powers. *Young v. Dowling*, 15 Ill., 481.

4. The name of the officer taking the acknowledgment is not given in the body of the certificate of acknowledgment. The statutory form, by leaving a blank for that name, requires it to be there inserted. A tax deed is not substantially in the form required by statute when it omits any averment therein required. The phraseology may be changed in many respects without substantially changing the form, provided equivalent averments are inserted; but when the fact required to be inserted is omitted, it loses a part of the substance. If courts can dispense with one requirement they can, with equal propriety, dispense with another which they may think the legislature has unwisely or unnecessarily required, and thus by gradual steps assume the entire legislative powers upon the subject.

5. The deed purports to be based upon a sale certificate first issued to the county in a case where the land could not be sold for the taxes, penalty and charges thereon. (Comp. Laws, 867, § 42.) The only statute in force at the date of this deed providing for or authorizing the issuance of a tax deed was § 10, page 877, Comp. Laws, which provides that a tax deed may be issued only in cases in which the land is *sold* for taxes. This land was not and could not be sold, or else the county treasurer had no authority to bid it off for the county, as stated in the deed. Such bidding off by the treasurer is not a sale within the meaning of said § 10. The county does not by such bidding off acquire any *new* lien on or title to the land — it can never become entitled to a tax deed thereon nor acquire any rights as an occupying claimant

thereunder. Neither the certificate nor the land is any part of the general county property, the custody of which is given to the county board, and neither of them can be sold by the county. . It is true, that Comp. Laws, page 867, § 44, provides a way by which the county, with the other corporations, may receive the taxes due them respectively, by allowing "any person" (other than the county) to purchase the *certificate*, and thereby become entitled to the amount of the taxes when paid by the owner of the land; but such purchaser never becomes entitled to a deed thereon. But it may be said that the certificate issued to the county, and acquired by "any person" as a purchaser is by law required to state that at a certain date the holder thereof will be entitled to a deed thereon. Let us see if that is true. Sec. 44 requires the treasurer to make to the county a certificate "similar" to that specified in § 43. If "similar" there means "technically and exactly like," then it requires the treasurer to certify, not only that the county will at a certain time become entitled to a deed, but also that the county paid the amount of tax, penalty and charges thereon, both of which are untrue. The only reasonable construction of the term "similar certificate" is, a certificate certifying the facts, just as a certificate to a purchaser at the sale recites the facts. The facts required in a certificate to the county are, that the land, describing it, could not be sold for the amount of taxes, penalty and charges, thereon, and was bid off by the county treasurer for the county for such amount, naming it. The statute nowhere prescribes a form for, nor provides for a deed upon a certificate to the county. Had the legislature intended that a tax deed should ever be issued on such a certificate, it would have provided a form of deed applicable to such case, or at all events would not have required all tax deeds to be in a form not applicable to such a case.

6. The middle portion of the deed (being about one-third of it) bears hardly any resemblance to the statutory form. It does not say that any person offered to pay the taxes, nor that the property was stricken off at any price, nor that the

payment of any sum was made to the treasurer, nor that the amount of taxes, penalty and charges was ever paid by anybody; neither does it give a description of property sold where the statutory form requires it — the second description of land in said deed being in a connection which gives it no coherency or meaning except as an averment that no less quantity was bid for.

But even if it is held that this deed may depart from the statutory form enough to suit the peculiar facts in the case, the deed still fails to be good, because it does not set forth sufficient facts upon which to found a conveyance. It does not say that the land could not be sold at any regular sale for the tax, penalty and charges thereon, as required by § 42, (Comp. Laws, page 867,) nor that any person ever paid, or offered to pay, a sum equal to the cost of redemption at that time, as required by § 44; nor does it say *what* county treasurer bid the land off, nor does it describe the land bid off by the treasurer other than by a reference to the land subject to taxation.

7. The evidence in the case shows that the plaintiffs and one Abel Whitney were tenants in common of this land before and up to January 21st, 1865, at which time the defendant purchased Whitney's title, and received from Whitney a conveyance of the undivided one-half of said land; that at the same time, and as a part of the same transaction, defendant got from Whitney the certificate on which the tax deed in question was subsequently made to defendant. Now we claim that upon this evidence the legal presumption is, that Whitney held that certificate for the joint benefit of himself and the plaintiffs, and that defendant, by receiving it as a part of his muniments of title, took only the rights that Whitney had, and the defendant cannot by means of that certificate, or of a tax deed subsequently taken thereon, acquire a title to the land to the exclusion of his co-tenants, the plaintiffs. One tenant in common before partition cannot purchase in an outstanding title or incumbrance on the joint estate for his exclusive benefit, and use it against his co-tenants. The

purchase inures to the common benefit of all the co-tenants —
the purchaser being entitled to contribution only: 1 Neb.,
448; 51 Penn. St., 377; 2 Black, 613; 49 Ill., 78; 2 Has-
kell, 288; 5 Johns. Ch., 406; 2 Greenl., 207; 4 Littell, 187;
6 Dana, 172; 6 Ohio, 227; 33 Cal., 408; 8 Mich., 263.

*John W. Day*, and *Ross Burns*, for defendant in error:

1. The clause, "such deed duly witnessed and acknowl-
edged," which occurs in § 10, ch. 198, Comp. Laws, p. 877,
is borrowed from the tax law of Wisconsin. The general
law of that state provides that no deed for the conveyance of
any land, or interest therein, shall be valid unless the same
be executed in the presence of two witnesses. In this state
our tax law does not designate the number of witnesses, nor
does any law of this state require an instrument of convey-
ance to be witnessed. At common law attesting witnesses are
not necessary to the validity of a deed. Where the statutes
make no provision as to the number of witnesses, the common-
law rule applies, and a deed that is *acknowledged* before a
proper officer needs no witness: *Gray v. Ulrich*, 8 Kas., 112,
121; Phillips on Ev., 413 to 421; 2 Blackstone's Com., 307;
note 21; 4 Greenl. Cruise on Real Prop., 31; 3 Mich., 581.
This deed is duly acknowledged, and this court has decided
that "we do not think, where a deed is acknowledged, any
witnesses are necessary;" *Stebbins v. Guthrie*, 4 Kas., 369;
and see *Shoat v. Walker*, 6 Kas., 72.

2. It is claimed that "the deed does not show that any
consideration was ever paid for the sale certificate, or the
assignment thereof." The tax deed shows that the land was
subject to taxation for the year 1861, and that the taxes
assessed on said land for that year remained due and unpaid
on the first Tuesday of May, 1862, (the time fixed by law for
the sale of the same for delinquent taxes,) and that at the
time aforesaid the treasurer of said county of Jefferson ex-
posed the same to public sale at the county-seat in said county
in conformity to all the requirements of the statute in such
case made and provided, for the payment of the taxes then

due thereon, and that no person bid therefor the amount of
such tax, penalty and charges so due and unpaid, and that
the land was bid off by the county treasurer *for the county of
Jefferson*, for the sum of $7.57, that sum being the whole
amount of taxes, interest and costs then due and remaining
unpaid on said property. The tax ⸍deed thus far shows a
compliance with the statute. (Sec. 42, Comp. Laws, 867.)
Sec. 44 of the same act made it the duty of the county treas-
urer, where land was bid off for the county, to make a cer-
tificate to the county, similar to those given to individual
purchasers; and also provides that said certificate shall be
subject to purchase by any person offering to pay therefor a
sum equal to the cost of redemption at that time, and the
county treasurer should assign the same to the purchaser, the
same being made assignable by the county treasurer in like
manner as those given to other purchasers — the same as an
individual. This tax deed further recites that the treasurer
duly assigned the sale certificate and all the right, title and
interest of the .said county to said property to Thomas
McGuire. It further recites that "two years having elapsed
since the date of said sale, and said property has not been
redeemed therefrom as provided by law, now, therefore,
* *⁻ * for and *in consideration* of the said sum of $18.61,
taxes, interest and costs due on said land for the year 1861,
to the treasurer *paid as aforesaid,*" etc. We think this shows
a consideration paid to the county. It is true that the deed
does not recite that McGuire paid to the treasurer $18.61
at the time the certificate was purchased by him, and the
transfer made by the treasurer, but it recites the fact that the
treasurer *duly* assigned the certificate. An officer *duly* doing
a thing, means, *regularly, properly.* If regularly and prop-
erly done, he must have received the amount of taxes, interest
and penalty then due; and the clerk certifies that the sum of
$18.61, taxes, interest and costs, was so due on said land,
and was so paid by Thomas McGuire to the treasurer as
aforesaid, who is, in a former part of said deed, described as

"the county treasurer of the county of Jefferson." *Bowman v. Cockrill*, 6 Kas., 326.

3. It is claimed that the deed is void, because the land was sold on the 7th of May 1862, which is found by reference to a calendar to be Wednesday, and ·that there is no averment in the deed that it was sold *at* any sale or adjourned sale begun and held the first Tuesday in May. It makes no difference whether the sale was made on Wednesday, or on any other day of the week. It is plain to be seen that the word *at*, before the "(an adjourned sale of)," in the form of the tax deed given in the statute, has been inadvertently left out or omitted from the deed in question by the draftsman. It cannot be seriously claimed that this slight omission invalidates this deed. It is simply a clerical omission, not a sub-. stantial defect. *Bowman v. Cockrill*, 6 Kas., 324; 5 Kas., 498, 510; 4 Mich., 140, 154; 13 Mich., 329, 414.

4. It is claimed the deed is· void because the name of the officer taking the acknowledgment is not given in the body of the certificate of acknowledgment. The acknowledgment forms no part of the deed ; but even if it did, the certificate of acknowledgment to this deed is in substantial compliance with the requirements of the statute.

5. It is claimed that the deed is void for the reason that the land was bid off by the county treasurer for the county, and for that reason a deed could not be made on a certificate issued to the county and transferred by the county treasurer. The argument of counsel on this proposition is ingenious. If this theory, contended for by counsel, can be sustained, then the owner of lands sold and bid in by the county for delinquent taxes can never lose the legal title to his lands by reason of such sale, nor the purchaser from the county thereby ever acquire a legal title thereto. This would be a strange anomaly indeed. But we do not understand the law to mean this. We think a person purchasing at a tax sale, and holding a certificate of purchase, and a person holding a transferred certificate of a tax sale from the county, stand in the

same relation. If the land is not redeemed in the time prescribed by law, the holder of the certificate is entitled to a deed in either case; and if the proceedings and deed are regular, the deed passes the title absolutely. Section 42, Comp. Laws, 867, provides that when the land cannot be sold for the amount of tax, penalty, etc., it shall be *bid off* by the county treasurer *for the county*, for such amount. Section 44 provides that the treasurer shall make a certificate to the county *similar* to that made to an individual, which certificate shall be assignable by the county treasurer in like manner as those given to *other purchasers.* The county here is called a purchaser; the only difference being, the county purchases on *credit*, and pays when it sells the certificate, while other purchasers at the sale pay when they make the purchase. Where there is a purchase or a purchaser, there must be a sale and a seller. Sec. 10, Comp. Laws, 877, provides that *if* ANY *land sold for taxes* shall not be redeemed, etc., the county clerk shall, on presentation to him of the *certificate of sale*, execute in the name of the county a deed of the land unredeemed, which means that the deed shall be made to the holder of the tax-sale certificate, whether the certificate was issued to him as the purchaser, or to the county, and then assigned to him.

6. Again, it is claimed the deed does not follow the form given in the statute. There is no form prescribed by law for this particular conveyance, but we think the form of the deed is substantially good, and the law fully complied with. In this particular kind of a case the deed certainly would not be good if it were made precisely in the form laid down in the statute. It is necessary to change the *form* of the deed *to suit the circumstances of each case* — the law only requiring that the deed shall be *substantially*, not *exactly*, in the form given in the statute. 6 Kas., 311, 324; Comp. Laws, 878, § 10.

7. It is scarcely necessary in this action to discuss the 7th point argued by counsel for plaintiff.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by plaintiffs in error against McGuire, for the partition of a certain quarter-section of real estate. The plaintiffs in error claim to own an undivided-half of said real estate. The defendant in error claims to own the whole of it. The plaintiffs' title is as follows: Patent for the land from the United States to David Eckert, dated October 1st 1858; deed of general warranty for the land, from Eckert to Morris S. Knight, dated August 9th 1857; deed for an undivided-half of the land from Knight to two of the plaintiffs, dated August 7th 1857. The defendant's title is as follows: Said patent, and said deed from Eckert to Knight; sheriff's deed conveying the interest of Morris S. Knight in said land (being the other undivided-half of said land) to Abel Whitney, dated Nov. 12th 1863; deed for an undivided-half of said land from Whitney to the defendant in error, dated January 25 1865; tax deed for the whole of said land from the county clerk of Jefferson county to the defendant in error, dated April 29th 1866. All the questions involved in this case are with reference to the validity and effect of said tax deed. Said tax deed reads as follows:

"Know all men by these presents, that whereas, the following described real property, viz., the S.W.¼ of section 31, in township 9, of range 18, containing 160 acres, situated in the county of Jefferson and state of Kansas, was subject to taxation for the year 1861: And whereas, the taxes assessed upon said real property for the year 1861 aforesaid remained due and unpaid at the date of the sale hereinafter named: And whereas, the treasurer of said county did on the 7th day of May 1862, by virtue of the authority in him vested by law, (an adjourned sale of) the sale begun and held on the first Tuesday of May 1862, exposed to public sale at the county-seat in said county, in substantial conformity with all the requisitions of the statute in such cases made and provided, the real property above described, for the payment of the taxes, interests, and costs then due and remaining unpaid on said property: And whereas, at the time and place afore-

said no person bid the amount of tax, penalty and charges on said land, the said land was bid off by the county treasurer for the county of Jefferson for said amount, to-wit, the sum of seven dollars and fifty-seven cents, being the whole amount of taxes, interests and costs then due and remaining unpaid on said property for the S.W.$\frac{1}{4}$ of section 31, in township 9 of range 18, containing 160 acres, which was the least quantity bid for: And whereas, the said county treasurer did on the 6th day of October 1862 duly assign the certificate of the sale of the property as aforesaid, and all the right, title, and interest of the said county to said property, to Thomas McGuire, of the county of Jefferson and state of Kansas: And whereas, two years have elapsed since the date of said sale, and said property has not been redeemed therefrom as provided by law: Now therefore, I, Terry Critchfield, county clerk of the county aforesaid, for and in consideration of the said sum of $18.61 taxes, interest and costs due on said lands for the year 1861, to the treasurer paid as aforesaid, and by virtue of the statute in such case made and provided, have granted, bargained, and sold, and by these presents do grant, bargain, and sell unto the said Thomas McGuire, his heirs and assigns, the real property last hereinbefore described, to have and to hold unto him the said Thomas McGuire, his heirs and assigns, forever, subject however to all rights of redemption as provided by law.

" In witness whereof, I, Terry Critchfield, county clerk as aforesaid, by virtue of the authority aforesaid, have hereunto subscribed my name, and affixed my official seal, on this 27th day of April 1866.

[COUNTY SEAL.]          TERRY CRITCHFIELD, *County Clerk.*
L. J. Trower, *Witness.*

STATE OF KANSAS, JEFFERSON COUNTY, ss.:

I hereby certify that, before me, a register of deeds in and for said county, personally appeared the above Terry Critchfield, clerk of said county, personally known to me to be the clerk of said county at the date of the execution of the above conveyance, and to be the identical person whose name is affixed to and who executed the above conveyance as clerk of said county, and acknowledged the execution of the same to be his voluntary act and deed, as clerk of said county, for the purpose therein expressed.   Witness my hand and official seal this 28th of April 1866.

[SEAL.]          "L. J. TROWER, *Register of Deeds.*"

This deed was recorded in the county register's office April 28th, 1866. There is nothing in the record of this case, as brought to this court, which shows when this action was commenced. But as the action was not tried until May 28th 1873, and as the court then found generally in favor of the defendant and against the plaintiffs, and rendered judgment in favor of the defendant and against the plaintiffs, thereby sustaining the regularity and validity of said tax deed, we should presume in favor of the findings and judgment of the court below that this action was not commenced until after more than two years had elapsed after the recording of said tax deed, and therefore that the two-years statute of limitations had run in favor of said tax deed before this action was commenced. Therefore we cannot declare the tax deed void unless it is void upon its face, or unless it is affected with some incurable irregularity not shown upon its face. The plaintiffs claim that it is void upon its face for about six supposed irregularities. We shall mention them in their order:

1st. It is claimed that the deed is not duly witnessed. This deed was witnessed by one witness, and only one. He was the same person who took the acknowledgment of the execution of the deed. The only reasons for claiming that said deed was not duly witnessed are as follows: In § 10 of the tax law then in force (Comp. Laws, 878,) there was a clause which reads as follows: "And such deed [a tax deed] *duly witnessed* and acknowledged, shall be *prima facie* evidence of the regularity of such proceedings from the valuation of the land by the assessor inclusive up to the execution of the deed, and may be recorded with like effect as other conveyances of land." And in the same section, at the bottom of the form given for tax deeds, where witnesses usually sign their names, the word, "Witnesses," is printed. It will be perceived that the statute quoted does not expressly require that a tax deed shall be witnessed, nor does the statute state how it shall be witnessed, whether by one, two, or a dozen witnesses. The statute simply says that "such deed *duly*

witnessed," etc., "may be recorded with like effect as other conveyances." Now what does "duly witnessed," mean? We think it means "witnessed according to law." And how does the law require that a deed of conveyance should be witnessed? It in fact does not require that a deed of conveyance shall be witnessed at all. The common law never did require that deeds of conveyance should be witnessed by attesting witnesses: Jacobs' Law Dict., *Deed,* ii, 8; 2 Black. Com., 307, and note 21; Comyn's Digest, *Fait,* B, 4; 4 Greenl. Cruise on Real Prop., 31, ch. 2, § 77, et seq., and notes; 4 Kent Com., 458; 2 Washb. Real Prop., 572; 2 Hil. on Real Prop., 208, § 153. And no statute can be found in this state that requires any such thing. Tax deeds were unknown to the common law, and our statutes do not require that they shall be witnessed in any different manner from other deeds, but leave the matter entirely optional with the parties executing and receiving them. The statutes above quoted were borrowed almost literally from Wisconsin, where attesting witnesses were necessary to all deeds; and this accounts for the words "witnessed," and "witnesses," being used. In this state the certificate of the officer taking the acknowledgment of a deed, with his signature, and seal if he has one, is considered a sufficient attestation of any deed; and with such a certificate the deed may be read without other proof. We think the deed in this case was duly witnessed, that it is valid, (if it is in other respects sufficient,) and that it is *prima facie* evidence of title.

2d. It is claimed that the deed does not show that any consideration was paid for the tax-sale certificate, or the assignment thereof. The property was bid off at the tax sale by the county treasurer for the county of Jefferson, and the county was not required by any law to pay anything therefor. The deed recites that the certificate of sale was *duly assigned* to the defendant; and this it does in almost the exact language given in the form prescribed by the statute. This we think was sufficient. It will be presumed that the purchase-money, and all that was necessary, was paid when the certifi-

cate was "duly assigned." The certificate with all the right, title and interest of Jefferson county to the land in question, could not have been "duly assigned" to the defendant, as is stated in the deed, if the purchase-money was not paid.

3d. The sale seems to have been on May 7th 1862, which was Wednesday. But the deed plainly enough shows that the sale was "an adjourned sale of the sale begun and held on the first Tuesday of May 1862."

4th. The name of the officer taking the acknowledgment is not given in the body of the certificate. That is not material. The officer certifies "that before *me, a register of deeds*," etc., and then signs his name, "L. J. Trower, Register of Deeds." There can be no misunderstanding as to whom the pronoun "*me*" refers. It personates unmistakably the person signing the certificate, and with its connection clearly expresses his official character.

5th. The property was bid off by the county treasurer for the county, and the certificate of sale was issued to the county, and afterward assigned by the county treasurer to the defendant. It is claimed that no tax deed could be made on such a sale, or such a certificate. Everything seems to have been done in accordance with the law as the law existed at the time the same was done. We think a valid tax deed may be made on such a sale and such a certificate, when the certificate and the interest of the county has been duly assigned, as in this case. A valid tax deed may be made under the laws of Kansas to the assignee of a county, the legal holder of the tax-sale certificate. (*Sprague v. Pitt*, McCahon, 212.)

6th. It is claimed that the middle portion of said tax deed is not in the statutory form. This is true; but still it is in the proper form to express the facts as they exist in this case, and as they must exist under the law in all such cases. The form of this deed is varied from the statutory form only far enough to express the facts in the case. In the case of *Bowman v. Cockrill*, 6 Kas., 311, 324, 325, we held that a tax deed need not be in the exact form prescribed by the statute; and in two later cases, *Norton v. Friend*, 13 Kas., 532, and *Magill*

*v. Martin,* ante, 67, we have held that the form of the tax deed must be so varied in all cases where the facts and the statutory form do not agree, that the deed will state the facts as they really are. The deed must state the exact truth, and must always show a legal sale, or the deed will be void.

7th. We hardly think that the question desired to be raised under the seventh heading of plaintiffs' brief is in the case. The question is, whether one of two or more tenants in common can procure a valid tax title to land held by himself and his co-tenants. It seems from the tax deed that the property in controversy was taxed for the year 1861. It was sold May 7th 1862 for the taxes of 1861, to the county of Jefferson. On October 6th 1862 the tax-sale certificate, and the interest of Jefferson county in and to the land, were transferred to the defendant, Thomas McGuire. And the tax deed is *prima facie* evidence of all of these recitals. If there was any evidence in conflict with these recitals the court below may have believed these recitals, and disbelieved the other evidence in conflict therewith. The court below found generally in favor of the defendant and against the plaintiffs, and therefore it would seem that the court did find that these recitals were true, notwithstanding there may possibly have been some evidence tending to contradict them. If there was any evidence tending to contradict these recitals it was slight parol evidence. If these recitals are true, neither Butts nor Whitney ever owned said tax-sale certificate. But even if Butts did own the certificate, if Whitney never owned it the point attempted to be raised is really not in the case. But even if Whitney at one time owned the certificate, still the point does not seem to be in the case. The assignment of the tax-sale certificate seems to have been made on October 6th 1862, yet Whitney did not have any other interest in the land until he got such interest under his sheriff's deed, on November 12th 1863. It would therefore seem that he obtained his right to said land under his tax-sale certificate about thirteen months before he obtained any right under the sheriff's deed. If the true facts are, that Whitney had said tax-sale certificate as-

17—14 KAS.

signed to him, and then afterward bought the undivided-half of said land at sheriff's sale, we suppose it will not be claimed that he had no right to take a tax deed to himself for the land on his tax-sale certificate, or to assign his tax-sale certificate to the defendant so that the defendant could take a tax deed upon the land. What the real facts are we cannot tell. But if there was really any mere irregularity in the assignment of said tax-sale certificate, we should not for that reason alone, and against all the presumptions in favor of the tax deed which has had more than three times the necessary length of time for the statute of limitations to run in its favor, and against all the presumptions in favor of the findings and judgment of the court below, declare the tax deed void, and reverse the judgment of the district court. It is admitted that there never was any unity of title between Whitney and McGuire on the one side, and the plaintiffs on the other side, for they all held under different titles. Was there any unity of possession? and if not, was Whitney or McGuire deprived of the privilege of acquiring a tax title? We do not think it is necessary to answer these questions.

The judgment of the court below is affirmed.

All the Justices concurring.