SAMUEL M. GARDENHIRE v. D. P. MITCHELL, *et al.*

TAX LIEN, *When Not Discharged; Form of Tax Deed; Assignment of Tax Certificate; Redemption.* In 1859, G. was the owner of a lot in Leavenworth city. The taxes for that year not having been paid, the property was sold in September, 1860, the county becoming the purchaser. It subsequently assigned the sale certificate, and in 1864 a tax deed was issued, in the form prescribed by the amendment to the tax law of 1860, passed in 1862. In 1862, G. died, leaving a widow and minor children. *Held,* 1st, That though the tax law of 1858, under which the assessment and levy were made, was repealed by the law of 1860, yet no tax liens were discharged by such repeal, and the act of 1860 authorized a sale for the non-payment of such taxes. 2d, That a change in the mere form of a tax deed prescribed by the legislature, is not a matter of which the original lot-owner can complain. 3d, That a tax deed, in due form, is *prima facie* evidence of the regularity and validity of all assignments of the sale certificate recited in it. 4th, That when the sale certificate produced by the county clerk shows a formal and proper assignment from the county to S., and the name of S. indorsed in blank on the back of it, a deed to G. will not, at the suit of the original lot-owner, be held void because no formal assignment was written over the signature of S., when neither the county nor S. has ever challenged the fact or the regularity of the transfer from S. to G., or the validity of the deed to G. 5th, That though in fact the time for redemption of this lot had not expired at the date of the deed, yet as the regular time for redemption of lots·from tax sales had passed, the deed was not prematurely executed. And 6th, That no redemption having been made or tendered, and the time therefor having expired before the day of trial, and the deed being in due form, and nothing produced to show any irregularity in the tax proceedings, a judgment in favor of the party claiming under the tax deed was right, and will be affirmed.

*Error from Leavenworth District Court.*

EJECTMENT, brought by *Gardenhire*, against *Mitchell*, and three other defendants. Findings and judgment for the defendants, at the February Term, 1874, of the district court. New trial refused, and *Gardenhire* brings the case here for review.

*B. Gray,* for plaintiff in error.

The opinion of the court was delivered by

BREWER, J.: This was an action of ejectment, in the district court of Leavenworth county, to recover the possession of two lots in Leavenworth city. The defendant set up a tax deed, and the validity of this deed is the question for decision. There was a separate deed for each lot, but being similar, we shall treat the case as though there were but one lot and one deed. The deed was made in 1864, and was for the taxes of 1859. From April, 1859, to February, 1862, James B. Gardenhire, the ancestor of plaintiff, was the owner of the lots. At the last date he died, leaving a widow and four children. Two of the children died in childhood, and unmarried. Of the two surviving, one was born in 1845, and the other, the plaintiff, in 1855. Plaintiff claims full title by descent and by deed from his mother and sister. By an act of the legislature of the state of Kansas which went into effect March 6, 1873, the plaintiff was invested with the rights of majority. April 17, 1873, he commenced this action. No redemption or attempt thereto was ever made by the plaintiff or those under whom he claims, and no tender of the taxes or any portion thereof to defendant, and no evidence offered bearing upon the tax title, other than the deed and sale certificate. Plaintiff claims in the first place that the tax deed was void because at the time of its execution the lots were the property of the widow and minors, and therefore the time for redemption had not expired; in the second place, that there was no evidence of any assignment of the sale certificate, the deed purporting on its face to have been made to an assignee, the county having been the original purchaser; in the third place, that the deed was not in the form prescribed by the law in force at the time of the sale, and therefore invalid; and finally, that the tax law of 1858, under which the assessment was made and the tax levied, was repealed in 1860, before the sale, and without any saving clause, and that therefore the deed was void for want of any authority to sell.

As the last question is the most fundamental, going to the validity of the sale, we shall consider that the first. Was the sale a nullity?

The assessment and levy were under the law of 1858. This was repealed by chapter 114 of the laws of 1860, which went into effect February 27, 1860. This chapter 114 was a general act for the assessment and collection of taxes, and purported to cover the entire ground. And while many of its provisions were identical with those in the law of 1858, it was evidently intended as, and was a substitute for that law. And it in terms repealed all acts and parts of acts inconsistent with its provisions. (§ 73.) Now did this repeal operate to wipe out all tax liens then existing, or prevent the enforcement of those liens, and the collection of those taxes, by proceedings in accordance with the provisions of the law then enacted? We think not. The repeal did not affect "any right accrued, any duty imposed, any penalty incurred, nor any proceeding commenced under and by virtue of the statute repealed." (Comp. Laws, p. 837, § 1.) At the time of the repeal, the tax had become a fixed charge upon the lot. Every step had been taken necessary to make it an established lien, as much so as a voluntary mortgage to the state. Now the repeal in no manner operated to release that lien. Grant that it took away the right to enforce that lien by a sale under the provisions of the repealed statute, and still it would not follow that it destroyed the lien or remitted the tax. The lot remained still charged with that tax debt to the state. The repeal of a law prescribing the manner of foreclosing the mortgage, does not release the mortgage. And the law of 1860, while repealing the law of 1858, itself provided for enforcing the collection of taxes by sale of the land. Section 35, laws of 1860, p. 211, reads: "All lands and town lots on which the taxes shall not have been paid before the first day of March, in each year, shall be subject to sale in the manner hereinafter provided." This statute, it will be remembered, went into effect before the 1st of March, 1860. This lot stood charged with a valid tax. This tax was not

paid before the 1st of March, 1860. The lot, therefore, under the plain language of the section, became subject to sale. And while the law of 1860 was probably prospective in its operation, it was not so limited that no one of its sections could apply to tax proceedings other than those commenced and carried to completion under its provisions; and we think the section is broad enough to include, and properly does include, a case like the one at bar, and authorized the sale which was in fact made. Any other construction would impute to the legislature the intention to abandon all efforts to enforce the collection of all prior unpaid taxes, and would be illy in accord with that recognized policy of this state in reference to the continuance of proceedings which has been so often referred to in this court. (*Gilleland v. Schuyler*, 9 Kas. 569; *State v. Boyle*, 10 Kas. 113.) That the legislature did not intend to abandon the collection of those taxes, is made clearer by chapter 127 of the laws of 1860, which went into effect three days before the general tax law of that year, and which extended temporarily the time for the collection of taxes in Leavenworth county.

Returning, we find the third objection to be, that the deed is not such in form or effect as contemplated by the law in force at the date of the sale. The law of 1860 simply provided, that on presentation of the sale certificate the county clerk should execute the deed "in the name of his county, as county clerk, under his hand and seal." (Sec. 56.) While in 1862 this section was amended by adding, "Said deed shall be substantially in the following form," and giving a form in which the county is not expressly stated to be the grantor. The language of the granting clause is, "Now, therefore, I, C. D., county clerk of the county aforesaid, . . . have granted, bargained and sold," &c.

We do not think any change was made in the effect of the deed. Each operated to "vest in the grantee an absolute estate in fee simple." Each was *prima facie* evidence of the regularity of all prior proceedings. So reads the statute. And as to form, no form was given in 1860, and the amend-

ment of 1862 was simply the adding of a form. But suppose the form was radically changed, has anybody a vested right in the form of a tax deed? May not the legislature prescribe a new form each year? and if anybody can complain, is it any one other than the purchaser? If he, the grantee, is content to take a deed in the new form, who is wronged, and who can complain? By a failure of the lot-owner to pay the taxes, the state has the right to sell the property to some one who will pay. It makes a contract of sale with such purchaser. Now, any change in the mere form of the evidence of purchase which does not change the effect of the instrument as evidence, and adds no new burden to, and takes no substantial right from, the original owner, and is accepted by such purchaser, is certainly within the power of the legislature. In *Robinson v. Howe*, 13 Wis. 347, it is said, that "the mere form of the deed was a matter of no great consequence and might be prescribed by the legislature, provided they gave him such a deed as his contract entitled him to."

The second objection is, that there was no proof of the assignment of the sale certificate. The deed is itself *prima facie* evidence of everything, from the valuation of the land up to the execution of the deed, and that includes assignments of the sale certificate. (*McCauslin v. McGuire*, 14 Kas. 234; *Hobson v. Dutton*, 9 Kas. 477.)

But as to one lot, plaintiff offered in evidence the sale certificate, which showed a formal assignment from the county to one Arthur Storms, and on the back the name of Arthur Storms indorsed in blank. No formal assignment from Storms appeared anywhere on the paper, yet the tax deed ran to Jacob Grebe. Counsel contends that such blank indorsement was not an assignment, and that therefore the deed was executed to the wrong party. It will be noticed that neither the county nor Storms is questioning this deed or claiming any interest in the property, and we think the matter is one which does not concern the plaintiff. The county sold to Storms, and contracted at a certain time to give a

deed to him or his assignee on surrender of the sale certificate. Grebe, claiming to be the owner, presents the certificate with Storms's name indorsed, and the deed is made. Now if Storms had not actually sold the certificate to Grebe, he and he alone is wronged, and he must come into court for relief. In *Woodman v. Clapp*, 21 Wis. 354, the court says:

"The deed recites that the defendant was the assignee of Comstock, who was the assignee of the county. The county is concluded by this recital. If not a ratification of the previously unauthorized act of the clerk, it certainly inures to the benefit of the defendant by way of estoppel; and so long as the county is concluded, it is not an objection of which the plaintiff can avail himself in this action."

That case goes beyond this, for here the only question is the fact of the assignment; there, in addition, the validity thereof.

We come now to the first and only remaining objection, and that is, that the deed was executed before the time for redemption had expired. The ordinary period for redemption had expired, but by section 51 of the tax law of 1860 minors were entitled to redeem at any time during minority and within one year thereafter, and widows were allowed five years after the sale. So that as to all parties having title to the land, the time for redemption had not in fact expired at the date of the deed. Was the deed therefore prematurely executed, and if so, void?

Section 56 provides that, "If any land sold for taxes shall not be redeemed within the time *specified by law*," the county clerk shall, on presentation of the sale certificate, execute a deed, which shall vest in the grantee an absolute estate in fee-simple, subject, however, to all unpaid taxes and charges, which are a lien thereon. Does that expression, "specified by law," refer to the general rule of time prescribed for such cases, of which officers and all others have knowledge, or to the time which in any particular and exceptional case may lawfully intervene between the sale and the final termination of the right of redemption? The statutes must be so construed as to harmonize their various provisions, and so far as

possible, to give reasonable effect to all. Now by section 43, the treasurer was required to give the purchaser a certificate of sale, which should state the time when the purchaser would be entitled to a deed. And by section 55, the treasurer was required to publish notice of the expiration of the time for redemption, "*specifying the same*," and stating the actual amount of tax and interest due at such time. Can it be supposed that these various provisions refer to other than the fixed and general rule of time? Is the county treasurer to investigate the question of ownership in each case, and determine the exact time when the right of redemption shall finally cease? No provision is made for such investigation, and, considering the constant changes of title through conveyances and death, any effort in that direction would be simply futile. Furthermore, the title to any lot might be in several persons, as in the case at bar, and the right of redemption as to each person expire at a different time. Must there be a separate certificate, a separate notice, and a separate deed for each interest? Or must the deed for the entire lot be withheld until the expiration of the last right of redemption? It will be noticed that all tax proceedings, at least so far as real estate is concerned, are proceedings *in rem*. The property, and not the owner, is charged with the tax; and the proceedings must be such that the record, and that alone, shows their regularity. It is true, the statute says that the deed shall convey "an absolute estate in fee simple," while if there be any right of redemption, such estate is subject to be defeated by a subsequent redemption. Hence, it is said the estate would not be absolute, but defeasible. But this it would seem would be more properly an exceptional limitation on the effect of any particular tax deed, rather than a restriction on the right to such deed. The deed actually executed, and which is in accord with the form given in the amendment of 1862, provides for such possible right of redemption; and hence, as counsel contends under his third objection, the effect of the deed under the law of 1862 is different from that of one under the law of 1860. But we think under either law the right

of redemption would exist, and a deed recognizing such right would have been proper under the law of 1860. The case of *Wright v. Wing, et al.*, 18 Wis. 45, discusses this question, and the conclusion is in accord with that reached by us; though that was a clearer case, because the estate which the statute said should pass was expressly declared to be subject to redemption as provided in the tax law. But still it is in point upon the question as to when the deed might lawfully be executed. It seems to us, therefore, upon the whole case, that the judgment of the district court was right, and must be affirmed.

All the Justices concurring.