WRIGHT VS. WING and others.

18   45
74   85

The purchaser at a tax sale under chapter 66, Laws of 1854, or under chapter 22, Laws of 1859, was entitled to a deed at the end of three years from the sale in *all* cases where the land remained unredeemed at that time, although the lands of minors, married women, &c., were subject to redemption *after* the delivery of the deed.

The provision in those statutes requiring the clerk of the board of supervisors to advertise unredeemed lands six months before the time limited for their redemption, stating among other things the interest calculated to the *last day of redemption*, and specifying that day, must be held to refer to the period fixed for redemption in ordinary cases, and after which the purchaser would be entitled to a deed, and not in any case to the period within which the land might be redeemed by an infant owner or other person having the privilege of redemption after the issue of the deed.

An action against the grantee in a tax deed executed under either of said statutes, to restrain him from entering upon the land, cutting timber, &c., cannot be maintained by the original owner, though still entitled to redeem, unless he has redeemed in fact or offers to do so.

APPEAL from the Circuit Court for *Shawanaw* County.

The plaintiff, who was at the commencement of the action, and had been for more than seven years previous, a married woman living with her husband, commenced this action in 1863 to restrain the defendants from setting up any claim to certain lands in Shawanaw county (of which she claimed to be the owner in fee), and from cutting and hauling away the timber thereon; to restrain them from prosecuting certain actions for trespass commenced by them against persons employed by the plaintiff to enter upon the land, cut timber thereon, &c., for her; and to have certain recorded tax deeds, under which they claimed, declared void, so as to remove the cloud created by them upon the plaintiff's title, &c. The tax deeds mentioned in the complaint were executed as follows: one on the 8th of March, 1862, upon a sale made in April, 1858; a second on the 31st of December, 1862, upon a sale made in April, 1859; and a third in June, 1863, on a sale made in April, 1860. The complaint avers that the deeds were "in due form of law," but that they were invalid because

issued less than five years from the dates of the respective sales. The answer alleged that the defendant *Nathan Paine* was the only one of the defendants who claimed any title to the land in controversy under said tax deeds; that he then was and for more than three years had been a resident of this state, and that in July, 1861, he entered into the military service of the United States for three years, and still remained in that service; that the other defendants occupied the land and were engaged in cutting and hauling away timber therefrom under authority from him; that the land had not been redeemed at the commencement of the action by the payment of the taxes for which they were sold in 1858; and that none of the taxes for which it had been sold, as mentioned in the complaint, had ever been paid.

On the filing of the complaint the circuit court granted an injunctional order as prayed for. After the filing of the answer and of an affidavit by one of the delendants, the court made an order dismissing the action as to *Nathan Paine*, and striking out so much of the injunctional order as restrained the defendants from prosecuting actions against persons employed by the plaintiff to cut timber upon the premises in dispute. From this order the plaintiff appealed.

*M. A. Edmonds*, for appellant:

A married woman may redeem her lands at any time within five years from the sale, and before a valid deed is issued and recorded. R. S. 1849, ch. 15, secs. 102, 104; R. S. 1858, ch. 18, sec. 153; Laws of 1859, ch. 22, secs. 18, 20. But because sec. 1, ch. 66, Laws of 1854, declares that the holder of a certificate of a tax sale, " after the *three years* for the redemption " of the land have expired, may perfect the title, &c., it is contended by counsel for the respondents that the deed may be issued *in all cases* at the expiration of three years, but that minors, married women &c. may redeem *after* the record of the deed. But the same act goes on to declare the effect of the deed so given, and, without any exceptions in favor of min-

ors, married women or others, declares that such deed, when recorded, shall have the effect to vest in the grantee therein all the estate of the former owners in fee, and all the interest of the county; and this court has decided that deeds given in pursuance of that act cannot be invalidated by showing any matters except those specified in section 2 of the act of 1852, to wit, that the lands were not liable to taxation, or that the taxes were paid or the land redeemed. And it is a well established rule of interpretation, that the strict letter of the law must yield to the true intent and meaning as collected from the whole context, when the strict letter would lead to possible injustice, contradiction and absurdity. Smith's Comm., secs. 515, 517 et seq.; 1 Kent, 462; *People v. Utica Ins. Co.*, 15 Johns., 380; *Whitney v. Whitney*, 14 Mass., 92; *U. S. v. Fisher*, 2 Cranch, 400 (358); Report of Judges, 7 Mass., 523. Again, the evils to be remedied, and which were in the minds of the legislature when passing the act of 1854, were as follows: 1. The act of 1853 had deprived the clerk of the county board of the power to issue tax deeds at the expiration of the time to redeem, and had substituted the tedious, expensive and uncertain process of foreclosure of the tax lien by suit in chancery. 2. There was no uniform, well known and authoritative form for a tax deed. 3. There was a general want of confidence in tax titles, deterring men from dealing in certificates and throwing the burden of the delinquent lands upon the counties. All these evils were in the legislative mind and were remedied partially at least by that act. But the period of redemption allowed by previous statutes to married women and others over whom our laws have always assumed a tutelary charge, was not an evil, was not so considered, and has never been the subject of discussion in our legislature; nor could any legislature we ever had, have been induced to pass the act in question, had they supposed that by so doing they were placing *femes covert*, infants and *non compotes* upon the same footing in this respect as all other persons. Again, the

whole context shows the intention of the act plainly enough.
Sec. 1 *first* repeals the repealing section of the act of 1853,
and revives acts and parts of acts thereby repealed; and *sec-*
*ondly* retains the other provisions of the act of 1853 as a cum-
ulative remedy; and *thirdly* gives the certificate holder his op-
tion either to foreclose the tax lien or to take a tax deed as
formerly.    Among the acts so revived is section 109 of chap.
15, R. S. 1849 (re-enacted in 1859, chap. 22, sec. 25), which is
as follows: "If any lands sold for taxes shall not be redeem-
ed as aforesaid, the clerk of the board of supervisors of the
county where the same was sold shall, *after the expiration of the*
*time prescribed by law for the redemption thereof*," execute a deed,
&c.   Was it the intention of the legislature to revive and repeal
this section in the same breath?   They revived it; they modi-
fied it so as to remedy the evils complained of at that time by
declaring the form and effect of the deed; and this modification
left nothing remaining of the section so revived except the
part above quoted.   Did the legislature also intend to repeal
that part, and to work so radical a change in the taxing laws
as to allow a tax deed to be issued and recorded against any
one's land before the expiration of the period of redemption
for the tax sale?   It is difficult to discover the advantage to
result from such a change, but the evils are glaringly apparent.
The deed, if subject to redemption thereof, would still re-
main on the record, a cloud upon the title, and would call for
the equitable interposition of the court to remove the cloud.
The statute of limitation commences to run from the recording
of the deed, and would, therefore, in the case of minors, have
run its full term in many cases long before the time to redeem
would expire, thus leaving the infant no option on arriving at
full age but to redeem; if indeed the right to redeem is pre-
served by the literal interpretation.   Again, the phraseology
is peculiar.   The language is "after *the* three years for the re-
demption thereof shall have expired."   The language of sec-
tion 109, ch. 15., R. S. 1849, is, "after the expiration of the

Wright vs. Wing et al.

time prescribed by law for the redemption thereof;" and it is but resorting to the ordinary rules of construction in such cases to construe the two acts together, and to substitute the word "time" for "three years" in the act of 1854, so as to express the evident intention of the whole act. Had the word "the" been omitted, there would be more room for the opposite construction. But, whichever construction shall be adopted, the law as it stood when the first and all succeeding tax deeds were given did not allow a tax deed to be issued until after the expiration of the time to redeem. The act of 1854 was repealed by that of 1859, if not by the revision of 1858, and the first deed was issued March 8th, 1862. At that time sec. 25 of chap. 22, Laws of 1859, was the governing section. This act was constitutional. It interfered with no vested rights. It did not extend the period of redemption as in the case of *Robinson v. Howe*, 13 Wis., 341; for, according to the theory of the defendant's counsel, the right to redeem remained perfect after the recording of the deed until the five years had elapsed, and therefore no substantial right of the defendant's was interfered with by changing the law so as to make the deed issuable only *after* the expiration of the time to redeem. No valid deed having been issued upon these lands, the plaintiff's right to redeem still continued. R. S. 1849, ch. 15, sec. 102; Laws of 1859, ch. 22, sec. 18.

*Whittemore & Weisbrod*, for respondents.

*By the Court*, DIXON, C. J. We do not see that the statutes of 1853, ch. 57, and of 1854, ch. 66, are of any force in this case, except as to the tax sale of 1858. The Revised Statutes of 1858, ch. 18, sec. 153, continues them in force only as to sales theretofore made. By sec. 1, ch. 191, R. S. 1858, they were expressly repealed from and after the first day of January, 1859. For the sales of 1859 and 1860, the case must depend upon the Laws of 1859, ch. 22. But whether

the case depends upon one of these statutes or another, we cannot agree with the plaintiff's counsel, that tax deeds are in either instance void because prematurely issued. Section 109, ch. 15, R. S., 1849, revived by the statute of 1854, and in force at the time of the first tax sale, expressly declared, that the estate vested in the grantee by tax deed, was "subject, however, to all unpaid taxes and charges, which are a lien thereon, *and to redemption as provided in this chapter.*" The same chapter provided that the lands of minors might be redeemed at any time before such minors became of age, or within one year thereafter, and those of idiots, married women and insane persons, within five years after such sale. Sec. 104. It also provided that the owner, occupant or any other person, might redeem land sold for taxes, at any time within three years from the date of the certificate of sale, and that the treasurer should give to the purchaser a certificate in writing, dated the day of the sale, describing the lands, the amount paid, *and the time when the purchaser would be entitled to a deed.* Secs. 102 and 98. It likewise required the clerk of the board of supervisors of each county, at least six months before the expiration of the time limited for redeeming lands sold for taxes, to cause to be published in a newspaper, &c., once a week for twelve successive weeks, a list of all unredeemed lands, specifying each tract or lot, the name of the person to whom assessed, if to any, and the amount of taxes, charges *and interest calculated to the last day of redemption,* together with a notice, that unless such lands should be redeemed *on or before the day limited therefor, specifying the same,* they would be conveyed to the purchaser. Sec. 100. The same provisions are found in the statute of 1859, secs. 25, 20, 18, 14 and 16. From these provisions two propositions are manifest: first, that the legislature intended that there might, under some circumstances, be a redemption after the execution and delivery of the deed ; and second, that the time at or after which the purchaser should be entitled to such execution and

delivery should be fixed and certain. First, the statute declared that the estate conveyed by the deed should be subject to redemption as therein provided; and second, that the treasurer, in his certificate of sale, and the clerk of the board of supervisors in his advertisement of unredeemed lands and notice, should name the time limited for redemption and at which the purchaser would become entitled to such deed. It seems to us clear, that the period thus definitely prescribed, which those officers were assumed to know and by which they were to be guided, could mean no other than the period of three years given to tax payers in general or persons laboring under no disability. Otherwise they were bound, the treasurer first, and the clerk of the board of supervisors afterwards, to acquaint themselves with the true state of title to every piece of land sold for taxes and unredeemed in their county—in most cases an impossibility on its very face, and which the legislature never could have intended. The question of title to lands is a judicial question, oft-times of great nicety and discrimination, depending upon the application of many abstruse and difficult rules; and it would be strange indeed, if the legislature had put these collecting officers upon the chase to look up and decide it for themselves. But more than this, they would be bound to ascertain the ages of all minors, owning lands sold for taxes, and give certificates and notices according to the age and interest of each, which would be another impossibility. Again, there would have been imposed upon them questions of sanity, idiocy and marriage, all judical, and little less intricate and perplexing than those immediately connected with land titles. All these questions must have been decided at the peril of the entire proceedings being void, in case of any error or mistake. We are confident that the legislature never intended these things, but that the deeds under consideration were properly issued at the expiration of the period of general redemption, leaving the plaintiff to exercise her special

right of redemption afterwards, in case the facts were such as to authorize it. And this seems to be the construction which the legislature itself has put upon the statute. For in the statute of 1854, in prescribing the time when the holder of the certificate shall be entitled to a deed, instead of the words " after the expiration of the time prescribed by law for the redemption thereof," used in sec. 109, R. S. 1849, we find the words " after the three years for the redemption thereof shall have expired." They were undoubtedly used as equivalent expressions.

Nor are provisions of this kind so novel as the plaintiff's counsel seems to suppose. Upon examination of Blackwell on Tax titles, chap. 27, it will be seen that like provisions have been made and similar rights of redemption given in other states. When the right of redemption exists after the execution of the deed, the title of the grantee is, of course, conditional. It is liable to be defeated by a redemption in conformity with the law ; and as against the person entitled to redeem, and who does redeem, the deed cannot have that conclusive effect ascribed to it by statute in other cases. The same law under which the purchaser acquires his right to the estate, also confers the privilege of redeeming upon the owner. The deed, if not made upon the express condition, is certainly subject to the implied one, that the estate granted shall revert to the former owner in case a redemption is made.

And this brings us to another question, and that is, whether this action can be maintained without a redemption or offer to redeem on the part of the plaintiff. We think it cannot. It is a suit in equity to restrain the defendants, the grantees in the tax deeds, their agents and servants, from entering upon, cutting and carrying away the timber, and exercising other acts of control and ownership over the premises described in the deeds. It does not appear that the plaintiff has redeemed, or that she proposes to do so. Neither is it shown that the deeds are so irregular or void as to justify a refusal to redeem.

It is true that the plaintiff alleges in her complaint, by way of excuse for not having paid the taxes, that more than half of the amount for each year was assessed for the purpose of defraying the expenses of building a court house at Shawanaw, and that Shawanaw is not the county seat of the county. This is the substance of all that is alleged in this behalf, and it is obviously insufficient for the purpose of putting in issue the legality of the taxes in that respect. No facts are stated, nothing throwing any light upon the nature of the controversy about the county seat, if such controversy exists. No relief is claimed upon this ground. Indeed it appears very clearly that the gravamen of the complaint is the supposed premature execution and delivery of the tax deeds, and that the pleader relies upon that as the sole ground of relief. Failing in that, the action rests entirely upon the fact that there exists on the part of the plaintiff a privilege of redemption, which, unless it has already been exercised, is now gone as to some of the deeds by lapse of time. Upon that fact alone, without a redemption or offer to redeem, the plaintiff has no standing in a court of equity. The interest in the estate depends exclusively upon a redemption. Without redeeming she has no present interest, the title being vested in the defendants subject to her right of redemption, which is a mere privilege that she may exercise or not at her option. Equity will not interfere upon the bare possibility that she may hereafter choose to redeem and thus become interested.

As the complaint shows no cause of action against any of the defendants, it becomes unnecessary for us to consider the propriety of that part of the order dismissing the action as against the defendant *Nathan Paine.*

It follows from these views that the order appealed from must be affirmed.

Ordered accordingly.