Hewitt and another vs. Week and another.

*January 14 — January 29, 1884.*

*Ejectment by grantee in unrecorded tax deed.*

Until a tax deed is properly recorded the grantee therein has not such a right to the possession of the premises as will enable him to maintain ejectment therefor.   [Taylor, J., dissents, being of the opinion that the tax claimant can commence the action before he records his deed, and that unless the original owner redeems the premises before final judgment in such action his right of redemption is gone although the tax deed is not recorded.]

APPEAL from the Circuit Court for *Marathon* County.

Ejectment to recover certain lands in Marathon county, which were conveyed to that county by two tax deeds, regular on their face, each dated December 21, 1867. The plaintiffs are the grantees of the county. Such deeds were copied upon the records in the office of the proper register of deeds, but at what time does not appear. Probably they were left for record soon after their execution. They were not entered in any index of recorded instruments until May 24, 1881. This action was commenced January 17, 1879. The complaint is in the statutory form. The defendants answered — (1) a general denial; (2) that they are the owners of the land claimed. On the trial the plaintiffs proved the above-mentioned conveyances. They also introduced a tax deed of the land in controversy duly executed to the defendants, which deed bears date June 7, 1878, and was recorded in the proper register's office on the same day. This deed was offered to show ouster, and was followed by evidence tending to show that it was void. The cause was tried by the court (a jury having been waived) and resulted in a judgment for the plaintiffs.

The findings of fact and conclusions of law are as follows: "1. The plaintiffs are the owners of the lands described in plaintiffs' complaint. 2. They are entitled to the possession thereof. 3. The defendants, by their answer, claim title to said lands and the right of possession thereto. 4. The defendants also claim title to said lands and the right of possession thereto by virtue of a certain tax deed, referred to in their answer, which said tax deed was duly recorded in the office of the register of deeds for Marathon county, and which said tax deed was based upon sale of taxes by the said county of Marathon for the year 1874, of the town of Wein, in said county, but the court further finds that said deed is null and void, for the reason that the assessment roll of said town of Wein for said year 1874, and upon which

said tax was levied, was not accompanied by the affidavit required by law by assessors to be fixed to their several assessment rolls."

As conclusions of law, the court then found: "1. That the title to the premises described in the complaint in this action is in the plaintiffs. 2. That plaintiffs are entitled to recover possession of the premises in the complaint in this action described, from the defendants, and to recover from the defendants one cent damages thereof. 3. That plaintiffs are entitled to an immediate judgment herein and to have the same entered and docketed."

The defendants appeal from the judgment.

For the appellants there was a brief by *James & Crosby*, and oral argument by *Mr. Crosby*.

For the respondent the cause was submitted on the brief of *Carl H. Mueller*.

A re-argument was ordered upon the following questions:

1. Can the grantee in an unrecorded tax deed maintain ejectment for the land therein described?

2. In whom is the right to the possession of unoccupied land conveyed by a tax deed, after the deed is issued and before it is recorded? Upon the re-argument

The cause was submitted for the appellants on the brief of *James & Crosby*.

*David S. Ordway*, of counsel, for the respondents.

Lyon, J. It is conceded that the record shows the lands in controversy are vacant and unoccupied, and have been in that condition from the time the tax deeds under which the plaintiffs claim title were issued. We shall determine the case on that basis without looking critically into the record to ascertain whether it supports the concession. In *Lombard v. Culbertson, ante*, p. 433, we hold that the tax deeds were not recorded until properly indexed. They were not so indexed until more than two years after this action was

commenced. Hence, those deeds were not of record when the action was brought. The question to be determined is whether the plaintiffs, claiming under such unrecorded tax deeds alone, may maintain ejectment against the grantee in a subsequent recorded tax deed of the same lands regular on its face, but which is claimed to be void. By taking the tax deed and placing it upon record, the defendants claimed a title to or interest in the lands claimed, which, if the deed is valid, entitles them to the possession thereof. Under the ruling of this court in *Pier v. Fond du Lac*, 38 Wis., 470, this, and this only, is such a claim of title as makes them proper defendants in an action to recover the lands, brought by the proper plaintiff.

This brings us to consider whether the plaintiffs can maintain this action. It was held in *Pier v. Fond du Lac*, that the action of ejectment under our statute is still a possessory action, as at the common law, and that it is essential to the maintenance of the action that the plaintiff has a present right to the possession of the land claimed. The test question is, therefore, Were the plaintiffs entitled to the possession of the land in controversy when this action was commenced? To resolve this question intelligently, it is necessary to determine the nature and qualities of the plaintiffs' title to or interest in the lands claimed under the unrecorded tax deeds.

The law in force when those deeds were executed is ch. 22, Laws of 1859. Under sec. 18 the original owner of the land might redeem from a tax sale at any time before the tax deed executed upon such sale was recorded. Sec. 25 provides that a tax deed regularly issued " shall vest in the grantee an absolute estate in fee simple in such lands, subject, however, to all unpaid taxes and charges which are a lien thereon, and to redemption, as provided in this act." These sections are retained in the present Revised Statutes, and stand as sections 1165 and 1176, respectively. Under

Hewitt and another vs. Week and another.

these provisions the original owner of the lands in contro-
versy had a right to redeem from the tax sales; that is to
say, he had an equity of redemption in such lands when this
action was commenced.   This right in the original owner is
incompatible with an absolute estate in fee simple in the tax
deed grantee, and the statute does not attempt to confer such
estate upon him.   It may confer upon him a title in fee sim-
ple, but that is conferred subject to the original owner's
right of redemption.   It is an estate subject to an equity of
redemption by the express terms of the statute.   At most, a
mere conditional fee passed by the unrecorded tax deeds,
while, with that exception, the interest of the original owner
in the land remained substantially as it was when the tax
lien was evidenced by the certificates alone.

   The estate which vested under the tax deeds before they
were recorded, is, we think, the same as that of a mortgagee
under a common law mortgage which passed the legal title
to the mortgaged premises to the mortgagee, leaving only
an equity of redemption in the mortgagor.   Yet such inter-
est was an estate in the lands which the mortgagor might
sell or devise, or which might be sold on execution for his
debt.   It was a freehold estate, which descended to the heir
as real estate upon the death of the mortgagor, intestate,
and his widow was entitled to dower therein.   1 Jones on
Mortg., sec. 15.   Whatever rule may have prevailed on the
subject in former times, and notwithstanding some more
modern decisions to the contrary, we think the present rule
on the subject, where the common law rule prevails, is that
the mortgagee cannot maintain ejectment against the
mortgagor to recover the mortgaged premises until after de-
fault in the payment of the mortgage debt.   Until default,
the mortgagor is entitled to the possession.

   In the case of an unrecorded tax deed, the original owner,
against whom, presumably, the taxes were assessed, is not,
in any correct sense of the term, in default to the grantee

in the tax deed. He has not promised to pay any sum to such grantee, and no statute has commanded him to do so. It is entirely optional with him to redeem his lands or not. True, he was once in default to the government for nonpayment of the taxes assessed upon his land, which the statute required him to pay. But he was relieved from that default by the sale and conveyance of his land, which discharged his obligation to the government. There was never a time when such grantee could truthfully say that the original owner was his debtor on account of such taxes or tax deeds, and hence there was never a time when the original owner was in default as to him.

The plaintiffs held the legal title to the lands claimed by them as security for the payment of the sum which the grantee in the tax deeds paid therefor, and interest thereon, if the original owner should elect to pay the same. That right of election and the estate of such original owner subsisted when this action was brought. That it is the policy of our law to give the right to the possession of lands so held to the owner of the equity of redemption is manifested by the statute which provides that "no action of ejectment for the recovery of mortgaged premises shall be maintained by the mortgagee, his assigns, or representatives." R. S., 805, sec. 3095; R. S. 1858, ch. 141, sec. 28.

Considering the nature and incidents of the estate of the original owner in the lands claimed when the action was brought, and having due regard to the policy manifested by the above legislation, it must be held that the plaintiffs, when they brought this action, had no right to the possession of the lands they seek to recover, and hence cannot maintain the action. The owner of the equity of redemption was then in constructive possession of the lands, or (what is the same thing where the lands are not actually occupied) he was entitled to the possession thereof; and

until the tax deeds were recorded, he, and he only, could maintain the action.

The conclusion we have reached renders it unnecessary to consider whether the defendants' tax deed was or was not effectually impeached.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for further proceedings in accordance with this opinion.

TAYLOR, J.   It is held, in the opinion of the court in this case, that a person holding an unrecorded tax deed upon a parcel of land has no such interest in or title to the land described therein as will enable him to maintain ejectment against any other person in possession of said land.   After as careful a consideration of said question as I have been able to give to it, I am unable to concur in that opinion.

As I understand it, the validity or invalidity of the tax deed under which the party claims title cannot affect the question, because that fact is one which must be determined after the evidence is in, and not *in limine.*   The rule established by this decision goes to the length of holding that if it appears by the complaint, or by the evidence produced on the trial, that the plaintiff in the ejectment action claims title by virtue of a tax deed, as the source of his title, and that such tax deed was not recorded when he commenced his action, then his action must fail, notwithstanding the evidence further shows that his tax title is valid in every respect, and that it has been recorded before the trial of the action; or, in other words, until a tax deed is recorded, the grantee has no such title to the lands conveyed thereby as entitles him to the possession or the right of possession thereof, as against any other person in possession or claiming the right to such possession.   The question is one depending solely upon the construction of the statutes of this

state, which authorize the sale of lands for the nonpayment
of taxes, and which declare the effect which such tax deed
shall have upon the title of the former owner or owners of
the land.  The question is, Upon the supposition that the
tax proceedings are all regular, and the deed is in proper
form, duly executed, acknowledged, and delivered, does the
title pass to the grantee upon such delivery, or not until it
is recorded in the office of the register of deeds of the
proper county?  To arrive at a satisfactory conclusion upon
this question, I think it profitable to trace the legislation of
the state and territory of Wisconsin bearing upon the ques-
tion.

The first act passed by the territorial legislature upon the
subject of the sale of lands for the nonpayment of taxes, and
fixing the time for the redemption from such sale, and the
conveyance to the purchaser in case they were not redeemed,
is ch. 68, Laws of 1838.  See Laws of 1836, 1837, and 1838,
p. 384.  Sec. 23 of this act first provides for giving the pur-
chaser at a tax sale a certificate of purchase, which is made
transferable by indorsement.  It then provides that if the
owner or claimant of the lands described in the certificate
of sale shall not, within *two years from the date* thereof, pay
to the purchaser, his heirs or assigns, the sum mentioned in
said certificate, with interest thereon at the rate of fifty per
cent. per annum, etc., " the collector, or his successor in office
at the time such deed is demanded, shall, at the expiration
of said two years, execute to the said purchaser, his heirs or
assigns, in the name of the territory of Wisconsin, a convey-
ance of the lot or tract of land so sold as aforesaid, and
described in said certificate, which conveyance shall vest in
the person to whom it is given an absolute estate in fee sim-
ple, subject to the claims of the county for all taxes, costs,
and charges accrued and remaining unpaid upon such lot or
tract of land after such sale as aforesaid.  And such convey-
ance shall be *prima facie* evidence that the sale was regular,

according to the provisions of this act, and every such con-
veyance executed by the collector or successor, and duly
acknowledged before any officer authorized by law to take
acknowledgments of conveyances, may be recorded and
have like effect as other conveyances when acknowledged
and recorded." The rest of the section provides that idiots,
married women, and insane persons may redeem lands owned
by them at any time within five years after the tax sale, and
a minor at any time before he comes of age, and one year
thereafter.

The provisions of the section above quoted were re-
enacted in the general statutes of the territory, of 1839, as
secs. 23 and 24, p. 49, the only change being that the inter-
est to be paid on redemption is reduced to thirty per cent.
per annum. These provisions were re-enacted in the same
language in the territorial statutes of 1841 (secs. 21, 22, 23,
pp. 44, 45, of the act for town and county government).

The law upon this subject was unchanged, after the act
of 1841, until the publication of the revised statutes of the
state in 1849, and that part of these statutes relating to
taxes took effect May 1, 1849. See sec. 1, ch. 156, R. S.
1849. Sec. 102 of ch. 15 of those statutes relates to the re-
demption of lands sold for taxes, and reads as follows:
"The owner or occupant of any land sold for taxes, or any
other person, may, at any time within three years from the
date of the certificate of sale, redeem the same or any part
thereof, or interest therein, by paying to the clerk of the
board of supervisors of the county where such land was
sold, for the use of the purchaser, his heirs or assigns, the
amount for which such land was sold, and all subsequent
charges thereon authorized by the provisions of this chapter,
or such proportion thereof as the part or interest redeemed
shall amount to, with interest on the amount of purchase
money at the rate of twenty-five per cent. per annum
from the date of such certificate; but whenever any land

sold for taxes shall be redeemed within six months after the sale thereof, interest as aforesaid shall be paid for six months; provided, however, that in all cases any such person may in like manner redeem any such lands, or any part thereof, or interest therein, at any time before the tax deed executed upon such sale is recorded, and when so redeemed such deed shall be void." This is the first act of either the territory or state which authorizes a redemption after the deed is issued. Sec. 104 of said chapter provides that minors may redeem at any time before they become of age, and within one year thereafter, and that idiots, married women, and insane persons may redeem at any time within five years after the date of the tax sale. Sec. 109 of the same chapter reads as follows: "If any land sold for taxes shall not be redeemed as aforesaid, the clerk of the board of supervisors of the county where the same was sold shall, after the expiration of the time prescribed by law for the redemption thereof, on the presentation to him of the certificate of sale, execute in the name of his county, as clerk of the board of supervisors thereof, under his hand and seal, to the purchaser, his heirs or assigns, a deed of the land so remaining unredeemed, and shall acknowledge the same, which shall vest in the grantee an absolute estate in fee simple in such land; subject, however, to all unpaid taxes and charges which are a lien thereon, and to redemption, as provided in this chapter; and such deed, duly witnessed and acknowledged, shall be *prima facie* evidence of the regularity of all the proceedings, from the valuation of the land by the assessor, inclusive, up to the execution of the deed, and may be recorded with the like effect as other conveyances of land."

Ch. 503, Laws of 1852, changed the law as to the effect of a tax deed as evidence. · It provides " that any deed of land hereafter executed by any officers authorized by the laws of this state to execute deeds of land sold for the non-

payment of taxes shall contain" certain recitations, and that "such deed shall be conclusive in all courts," etc.    There is nothing said in this chapter about the recording of the deed as in any way affecting the title, except that sec. 3 of the act provides that the original owners may redeem the lands sold within one year after the recording of the tax deed, when the deed is issued upon a sale made before the passage of the act.    The law in regard to redemptions generally was not changed by this act.

Ch. 66, Laws of 1854, changed the rule in declaring the effect which a tax deed should have as against the original owner.    Sec. 1 of said chapter, after repealing a part of ch. 57, Laws of 1853, which repealed all former laws authorizing the issue of tax deeds, and restricted the purchaser to a foreclosure of his tax certificate by an action in chancery, and restoring certain sections of the Revised Statutes repealed by said ch. 57, reads as follows: "The holder or holders of any such certificate of sale, after the three years of redemption thereof shall have expired, may perfect the title to the land described in such certificate, and sold for the nonpayment of taxes and unredeemed, by filing the same with the officer authorized by law to execute deeds of lands sold for the nonpayment of taxes, who is hereby required to execute, acknowledge, and deliver such deed as provided by law, *and when recorded in the office of the register of deeds of the proper county shall vest in the grantee therein all right, title, interest, and estate of the former owner or owners in fee* in and to the lands so conveyed, and also all the right, title, interest, and claim of the state and county thereto; and the same shall be received as evidence with, and have in all respects the force and effect in all courts, as is or may be given by law to such deeds executed in pursuance thereof; nor shall the title conveyed by any deed of lands sold for the nonpayment of any tax or taxes to the grantee therein, his heirs or assigns, be invalidated or in any way affected or

avoided by any error previously made in assessing, listing, taxing, selling, or conveying said land, or in any other proceeding previous to the execution and delivery of such deed." This act does not in any way change the law on the subject of redemptions from tax sales.

This law was re-enacted in R. S. 1858 (see the latter part of sec. 127, ch. 18 of said revision), but took away the conclusive effect of the deed as declared by sec. 1, ch. 66, Laws of 1854; but ch. 22, Laws of 1859, repealed this section of the Revised Statutes, and restored the law as found in R. S. 1849. Sec. 25 ch. 22, Laws of 1859, is in the exact language of sec. 109, ch. 15, R. S. 1849; and sec. 18 of said ch. 22 is in the exact language of sec. 102 of said ch. 15, R. S. 1849. Sec. 20, ch. 22, Laws of 1859, provides for the redemption of land sold for the nonpayment of taxes, by minors, married women, idiots, and insane persons, and is in the same language as sec. 104, ch. 15, R. S. 1849.

Sec. 25, ch. 22, Laws of 1859, has never been repealed, and was re-enacted in R. S. 1878 as sec. 1176 of said statutes. Sec. 1176, R. S. 1878, also contains amendment to said sec. 25, made by ch. 460, Laws of 1864. The amendment of 1864 has no bearing upon the question under consideration in this case. Sec. 18 of said ch. 22, Laws of 1859, has not been changed, and was also re-enacted in the revision of 1878 as sec. 1165. The only change made is that what is added to said sec. 18 under a proviso, is connected with the rest of the section by the word "and" instead of the words "provided, however," and this section requires the person redeeming to pay "all other taxes and charges thereon imposed subsequent to such sale, and paid by such purchaser or his assigns prior to such redemption, with interest thereon at the rate of twelve per cent. per annum, vouchers or other evidence of the payment of which shall have been deposited with the county clerk or produced to such person seeking to redeem," and so combining, in fact, secs. 18 and 19 of said

ch. 22 in one section. Sec. 20 of said ch. 22 is re-enacted in the revision of 1878 in sec. 1166, with additional provisions in favor of the heirs of such minors.

The statutes above referred to are the only ones which have any direct bearing upon the question under consideration. The material question is, I think, When does the title to the lands described in a perfectly valid tax deed vest in the grantee named therein? This, it appears to me, must decide the whole question; for if the title vests in the tax title claimant when his deed is executed, acknowledged, and delivered, his right to the possession of the lands described therein is demonstrated, and if any other person excludes him from such possession he can maintain the action of ejectment against such person in order to determine the right, and give the possession to the party having the right thereto, unless there be some statutory law prohibiting the bringing of such action. Certainly, the law is well settled in this state that as between individuals the title to land passes to the grantee upon the execution and delivery of the deed, if the grantor have title. This court has repeatedly held that such is the law, and that the deed need not be acknowledged nor perhaps even witnessed, as required by law, to effect that purpose; the delivery of the deed under the seal of the grantor being sufficient to pass the title as between the parties. See *Myrick v. McMillan*, 13 Wis., 188; *Quinney v. Denney*, 18 Wis., 485; *McMahon v. McGraw*, 26 Wis., 614; *McPherson v. Featherstone*, 37 Wis., 632; *Knight v. Leary*, 54 Wis., 459, 470.

Under the laws of this state, real estate may be sold for the nonpayment of taxes, and the purchaser at a tax sale is entitled to a deed from the proper officer upon such sale, unless the original owner of the lands sold, his heirs or assigns, or some other person for him, redeems the lands from such sale by making the payments required by law within the time fixed by law. The statute provides for the execu-

tion and delivery of the deed to the purchaser at the tax sale; and there can be no doubt of the power of the legislature to fix the time when the title of the original owner shall be divested by such sale, and when such title shall vest in the purchaser. Has the legislature fixed the time by law? And what is the time fixed?

Under the laws above cited there can be no ground for dispute that up to the enactment of the R. S. 1849, that time was fixed when the deed was executed and delivered by the proper officer to the purchaser or his assigns, provided the deed was delivered after the time for redemption had expired. Up to that time the law did not require the deed to be acknowledged in order to pass the title. The acknowledgment was only required, as it was required of all other deeds, to entitle the deed to be recorded in the books of the register of deeds of the proper county. The language of the statute is plain. It says: "At the expiration of the two years [allowed for redemption], the collector shall, on demand, execute to the said purchaser, his heirs or assigns, in the name of the territory of Wisconsin, a conveyance of the lot or tract of land so sold as aforesaid and described in said certificate, *which conveyance shall vest in the person to whom it is given an absolute estate in fee simple,*" subject to certain claims of the county to taxes, costs, and charges which may have accrued after the sale. Here is a plain and positive declaration that the title shall vest in the grantee on the delivery of the deed. This remained the law until the adoption of the Revised Statutes of 1849.

Sec. 109 of ch. 15 of the revision of 1849, is equally explicit upon that subject. The only change made is that the title shall vest in the grantee when the deed is executed, *acknowledged,* and delivered, subject to all taxes and charges which are a lien thereon, and to redemption as provided in this chapter. The redemption provided in that chapter is the general provision in sec. 102 that redemption may be

made at any time after the three years from the sale, and
before the tax deed is recorded, and the redemptions allowed
to minors, idiots, married women, and insane persons by
sec. 104.

Ch. 503, Laws of 1852, which made the tax deed con-
clusive evidence of title, makes no mention of its being
recorded; but sec. 1, ch. 66, Laws of 1854, which also made
the tax deed conclusive evidence of title, and shut the door
to all inquiry into the regularity of the tax proceedings,
changed the law, and declared, in effect, that the tax deed
be executed, acknowledged, and *recorded in the office of the
register of deeds of the proper county*, before it should vest an
estate in the grantee; and, when so executed, acknowledged,
and recorded, it should vest in the grantee named therein
all the right, title, interest, and estate of the former owner
or owners in fee in and to the lands so conveyed, and also
all the right of the state and county; and then made the
deed so recorded conclusive evidence of the regularity of the
tax proceedings.    This law remained in force so long as
the tax deed had the effect of concluding the former owner of
the lands upon the regularity of the tax proceedings, but was
changed again by ch. 22, Laws of 1859, at the same time
that the law as to the conclusive effect of the deed was
changed (see secs. 25 and 18 of said ch. 22); and so the stat-
utes have remained ever since.    The repeal of the law which
declared that a tax deed must be executed, acknowledged,
and recorded before title should vest in the grantee named
therein, after it had been in force from 1854 to 1859, and
enacting that thereafter, when the deed was executed and
acknowledged, it "shall vest in the grantee an absolute
estate in fee simple in such land," is conclusive that the leg-
islature did not intend to make the recording of the deed a
condition precedent to the vesting of such title.    It seems to
me so plain a proposition that I am unable to state it in
any stronger way than the statute itself states it.    The only

question there can be upon the subject is whether the further provision in the statute, viz., "subject, however, to all unpaid taxes and charges which are a lien thereon, and to redemption, as provided in this act," qualifies the previous declaration of the statute that the title shall vest when the deed is executed and acknowledged. It is very clear that making the deed subject to the payment of taxes and charges, which are simply a lien upon the land, is in no way inconsistent with the vesting of the estate in the grantee as declared. A deed from one private person to another, which conveys the land and estate subject to the taxes which are a lien upon the lands conveyed, conveys the fee to the grantee subject to the payment of the lien of the taxes, and so the tax deed does the same thing, as declared by the law above quoted.

Does the fact that the land is subject to redemption after the deed is executed, acknowledged, and delivered, by the former owner at any time before it is actually recorded, and, in the case of idiots, insane persons, and married women, within five years after the date of the tax sale, and in case of minors at any time before they become twenty-two years old, prevent the title in fee from vesting in the grantee named in the tax deed, as the statute declares it shall? If this were fairly debatable as an original question, it seems to me we are precluded from discussing it by the former decisions of this court.

In the case of *Wright v. Wing*, 18 Wis., 45, two questions were discussed and decided: *first*, whether, when the owner of the land sold for taxes was a married woman, it was legal to issue the tax deed at the end of three years from the sale; and, *second*, whether the person holding possession of the lands sold under such tax deed was, as against such married woman, and before the expiration of the five years after the sale, entitled to the possession of the lands sold. Both questions were answered in the affirmative by this court, Chief

Justice Dixon delivering the opinion. Upon the first question the learned chief justice says: "From these provisions two propositions are manifest: first, that the legislature intended that there might, under some circumstances, be a redemption after the execution and delivery of the deed; and, second, that the time at or after which the person should be entitled to such execution and delivery should be fixed and certain." The chief justice, after stating the inconvenience which would arise from holding that in cases of married women, insane persons, and minors a tax deed could not be legally issued until the time for redemption had expired in each particular case, says: "We are confident the legislature never intended these things, but that the deeds under consideration were properly issued at the expiration of the period of general redemption [meaning after three years from the date of sale], leaving the plaintiff to exercise her special right of redemption afterwards, in case the facts were such as to authorize it." Again he says: "When the right of redemption exists after the execution of the deed, the title of the grantee is, of course, conditional. It is liable to be defeated by a redemption in conformity to law; and, as against the person *who is entitled to redeem and who does redeem*, the deed cannot have that conclusive effect ascribed to it by statute in other cases. The same law under which the purchaser acquires his right to the estate, also confers the privilege of redeeming upon the owner. The deed, if not made on the express condition, is certainly subject to the implied one, that the estate granted shall revert to the former owner in case a redemption is made." In this action the married woman sought to restrain the tax title claimant from taking possession of the lands, and cutting and removing the timber therefrom. The action was commenced within five years after the tax sale and before her right of redemption had expired, but she had not redeemed, nor did she offer to redeem in her complaint, and

Hewitt and another vs. Week and another.

she having failed to show that the tax deed was void on account of any irregularities in the proceedings, it was held that she was not entitled to any relief; and upon this point the chief justice says: "Her interest in the estate depends exclusively upon a redemption. Without redeeming she has no present interest, the title being vested in the defendants, subject to her right of redemption, which is a mere privilege that she may exercise or not, at her option. Equity will not interfere upon the bare possibility that she may hereafter choose to redeem and thus become interested."

In *Woodbury v. Shackleford*, 19 Wis., 55, it was held that a tax deed issued at the expiration of three years after the date of sale, upon the lands of an infant, and which was recorded for more than three years, was a bar to the action of the infant owner, the same as against any other person, and the only way to save his title after the expiration of said three years was to redeem under the statute before he became twenty-two years old. In this case Chief Justice DIXON repeats the language used in the case of *Wright v. Wing:* "The redemption thus authorized is a mere privilege secured to infants, and unless exercised does not enlarge their rights in any other particular. This was so held in the case of a married woman, which arose under the subsequent clause of the same section. Hence, the right of action, so far as it is concerned in this provision, depends upon the fact of redemption."

In *International Life Ins. Co. v. Scales*, 27 Wis., 640, it was contended by counsel that the provisions of ch. 22, Laws of 1859, which secured to the land-owner the right of redemption after the deed issued, and before it was recorded, was unconstitutional, on the ground that it impairs the obligation of a contract or divests a title. In this case Chief Justice DIXON again says of this provision: "It does not impair the obligation of the contract, or divest the title previously acquired and absolutely vested in the holder of the tax deed.

It has always been the law of this state that there might be a redemption at any time before the tax deed was recorded. R. S. 1849, ch. 15, sec. 102. This right of the owner or occupant, or any person interested, thus to redeem, was one of the conditions of the contract, made such by law, and entered into it and bound the purchaser as much as if it had been incorporated or expressly recited in the deed and certificate of sale. The title of the purchaser was, therefore, conditional, or subject to be defeated by a redemption at any time before the deed was recorded."

It seems to me that these cases clearly hold that the title of the grantee in a tax deed vests when the deed is executed, acknowledged, and delivered; and that there may be a right of redemption in the original owner after such delivery, in no way interferes with the vesting of such title. The words of the statute securing the redemption, after the deed is issued and before recorded, are a clear indication that the title vested in the grantee of the deed after it was acknowledged and delivered, and before recorded. The words are that " when so redeemed such deed shall be void." This is a clear intimation, as was held in the cases above cited, that until redeemed the title vested under the deed, and that the right to redeem did not leave any estate in the original owner by virtue of which he was entitled to the possession of the lands granted by the deed.

After the tax deed is properly issued, acknowledged, and delivered, there is no relation between the tax title claimant and the original owner, analogous to that of mortgagee and mortgagor. The right of redemption which remains in the original owner is, as is said in the cases above cited, a mere option, to be exercised or not at the will of such owner. The tax title claimant has no power to compel him to exercise such option, nor has he any personal claim against the owner for the taxes, costs, and charges for which the land was sold. The statute of this state which authorizes the

grantee in a tax deed to commence an action to bar the original owner of all right to contest the validity of his deed, is a clear indication, if any were wanted, that the legislature did not consider that the relation of mortgagee and mortgagor existed after the deed was issued. The judgment authorized to be entered in such action is one which bars the original owner of all right to claim thereafter any right, title, or interest in the land in controversy.

In this action it is clear that the tax claimant can commence his action before he records his deed (secs. 1197, 1203, R. S.), and it is also clear that unless the original owner redeems the lands in question in such action before a final judgment is rendered against him therein, his right of redemption would be gone, though the deed were not recorded. This, I think, is evident from the fact that sec. 1209 provides that if any of the defendants in such action were minors at the time of the tax sale, and not twenty-two years old when the action was commenced, or idiots or insane persons at the time of such sale, and the action was commenced within five years after the sale, as to all such persons the action should be dismissed, and no judgment in such action shall bar the rights of any such minor, idiot, or insane person. This section clearly pointing out certain persons as to whom the right of redemption had not expired when the action was commenced, and that as to such persons the judgment should not bar their rights, it is conclusive that any other persons who had such right of redemption when the action was commenced, not named in said section, would be barred by the judgment. *Dayton v. Relf*, 34 Wis., 86. If the fact that a right of redemption remains in the original owner after the tax deed is issued prevents the vesting of such a title in the grantee as entitles him to the possession of the lands described in his deed, then it is very clear to me that no such title can be vested by the mere recording of his deed, except in those cases in which the recording puts

an end to the right of redemption. So that, in the case of minors, idiots, and insane persons, the tax claimant's right is not enlarged by the recording of his deed, and, as to them, his right to possession must remain in abeyance until their right of redemption has expired, and to so hold is, to my mind, wholly inconsistent with the decisions of this court above cited.

It seems to me there is a much stronger reason for holding that the right of redemption secured to the minors, idiots, and insane persons should prevent the vesting of the title in the tax title claimant, than in the case of the general owner before recording. In the case of the general owner the right is wholly dependent upon the will of the grantee in the tax deed, and in the other cases it is secured to the parties beyond the power of the grantee in the tax deed to deprive them of it. Certainly, the more valuable right of redemption is secured to the minor, idiot, or insane person, and if that right has any effect upon the title of the grantee in the tax deed to deprive him of the right to possess himself of the land under his deed, it ought to be more potent in favor of the minor, idiot, and insane person than in favor of those whose right can be destroyed at once by the action of such grantee. The title of the grantee in a tax deed, before recording, is clearly a title in fee upon condition,—1 Washb. on R. P. (3d ed.), 66, 67;— and until the condition happens which can divest the estate, such grantee has all the rights of the owner in fee absolute.

I have not, as the majority of the court have not, considered the other questions in the case, in order to determine whether the plaintiffs should have had judgment in the action; but, upon the ground stated in the opinion, if there be no other objection to the plaintiffs' recovery, I am clearly of the opinion that they were entitled to recover.