FARRAND et al. v. LAND & RIVER IMP. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. April 18, 1898.)

No. 467.

1. **NEGLIGENCE OF ATTORNEY—TITLE ADVERSE TO CLIENT—ESTOPPEL.**
   An attorney who negligently fails to see that a judgment, recovered by him for another in the county court, is properly docketed in the office of the clerk of the circuit court to make it a lien on real estate, as required by Laws Wis. 1856, c. 120, § 192, is not precluded from afterwards acquiring title to, and holding for his own benefit, land upon which such judgment would have become a lien had it been so docketed.

2. **EXECUTION AFTER DEATH OF PLAINTIFF—BID AND CERTIFICATE IN NAME OF DECEASED.**
   Notwithstanding the statute authorizes the issue of execution after the death of the judgment plaintiff, "in the same manner and with like effect as though the person in whose favor the same was rendered was still living," the sale is a nullity where the bid is made and the certificate taken in the name of the deceased plaintiff.

3. **MONEY HELD BY ATTORNEY—DEATH OF CLIENT—PROTECTING CLIENT'S INTERESTS.**
   After the death of his client, an attorney has no right to use money collected for the client to redeem land from a tax sale, in order to protect such client's interest therein.

4. **ATTORNEY'S NEGLIGENCE—LOSS OF LIEN—ESTOPPEL.**
   Where it was an attorney's duty to redeem land from a tax sale in order to protect his client's judgment lien thereon, his failure to do so affords no ground for asserting against him an estoppel to deny the existence of such lien years after it has been extinguished by such sale.

5. **TRUST EX MALEFICIO IN LAND—ENFORCEMENT—LACHES.**
   Land was sold on execution in 1859, a year after the death of the judgment plaintiff, and bid off for him, and certificate taken in his name, by his attorney, in ignorance of his death. No deed was taken on the certificate. The land was afterwards sold for taxes, and title thereby acquired by another. At a subsequent tax sale it was purchased by said attorney, who, in 1870, received a tax deed therefor. In 1883 he sold the land to defendants, and in 1895 plaintiffs, the administrator and widow of the judgment plaintiff, commenced suit to enforce a trust ex maleficio in the land. *Held,* that the long delay constituted such laches as to bar relief.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

This suit was brought on September 28, 1895, by the administrator of the estate and the widow of George A. Porter against the Land & River Improvement Company and Hiram Hayes for the purpose of enforcing an alleged trust ex maleficio in land conveyed by Hayes to that company. The essential facts are not in dispute. By a letter dated "Superior, June 16, 1857," George A. Porter sent to M. S. Bright a promissory note made by Ray & Markel, a firm composed of James D. Ray and Clinton A. Markel, with directions to protest, and, if necessary, to sue in time for the next term of court, and for "further instructions at any time" to address him at Detroit, Mich. M. S. Bright and Hiram Hayes were at that time partners as attorneys at law at Superior,

Douglas county, Wis., where Ray & Markel were engaged in business, and on September 3, 1857, they obtained judgment on the note against the makers, in the county court of Douglas county, for the sum of $1,135.54. It is claimed that this judgment became from the date of entry a lien upon a quarter section of land in the county, of which Ray held the legal title. Before the entry of the judgment, on August 1, 1856, Ray had bound himself in writing to convey the land to Augustine Chester and Benjamin Chester for $2,090, for the unpaid balance of which sum the Chesters executed to him their promissory notes for $530 and $560, payable, respectively, August 1, 1857, and August 1, 1858. There is a stipulation in the record made by counsel that these notes were paid. Counsel for the appellants afterwards gave notice that the stipulation was withdrawn because made without the authority of his clients, but no order of the court authorizing the withdrawal was obtained. On October 12, 1857, Augustine Chester assigned the contract to Benjamin Chester, who, on November 25, 1857, assigned it to Mary Etta Chester, who, on February 1, 1889, assigned it to Margaret C. Harney. This contract was recorded March 31, 1858.    George A. Porter died on October 31, 1858, but in ignorance of his death Bright & Hayes, on the ensuing 31st of December, caused the issue of an execution on the judgment, which was returned unsatisfied, and in October, 1859, they procured of the county judge an order for execution upon the judgment, notwithstanding the lapse of two years since its rendition. The execution was issued on November 3, 1859, directed to the coroner of the county, Ray being the sheriff, and levy was made upon the land in question, on the supposition that Ray had an interest therein. Sale by virtue of the execution was made on December 24, 1859, and, the land having been bid off by Bright & Hayes for Porter, whom they supposed alive, the coroner made duplicate certificates of the sale,˙ one of which was filed in the office of the register of deeds of Douglas county on December 30, 1859, the sale being also entered in the sheriff's sale book on the same day; and the other was delivered to Bright & Hayes for Porter. A conveyance of the land in pursuance of the sale was never made. On March 15, 1858, Bright & Hayes informed Porter by a letter addressed to him at Detroit of certain collaterals which they had received of Ray & Markel for the payment of the judgment, of the rendition of which they had before written him, and of the payment to them by Ray of $140 in provisions, which they had turned on the judgment. One item of the collaterals was the second Chester note for $560. That letter Porter answered from Detroit on April 19, 1858, returning the collateral sent him—a draft on parties in New York—protested for nonpayment, and saying that the letter of March 15th was the first notice he had received of judgment having been obtained in his favor. On May 10, 1858, Bright & Hayes replied, and it does not appear that another letter passed between the parties until January 6, 1860, when Bright & Hayes mailed a letter to Porter at Detroit, stating that they had bid off the land described at execution sale in his name for the sum of $650, that the property would have been sold sooner had there not appeared to be an equitable lien upon it in favor of parties in Chicago, created by an obligation of Ray to convey the land. This letter was not acknowledged by Porter's widow, or by his brother or uncle, who resided and were well known in Detroit, and they each testified that they had no knowledge of it. It was not returned to Bright & Hayes. In September, 1858, the land was sold for taxes, and the tax deed made on May 6, 1863, to Thomas A. Kiley, was duly recorded, but, the deed being defective for want of the words "as the fact is" in the redemption clause, a corrected deed supplying the defect was made to Kiley on December 24, 1864. That deed was not recorded. In 1862 the land was sold for taxes to Douglas county, but was redeemed by Kiley in November, 1862; was again sold in 1863 for taxes, and again redeemed by Kiley in June, 1864; the sums paid being $69 and $9.78, respectively. Bright & Hayes dissolved partnership in 1860, Bright remaining in Superior until some time in 1861, when he removed to New York, where he died in 1868. After the dissolution Hayes went to Washington, D. C., where he did clerical work until October, 1862, when he was appointed a quartermaster, and served in that capacity until mustered out in October, 1865, being at that time a lieutenant colonel. He returned to Superior in 1866, where he engaged in teaching school, gardening, and doing what little law business came to him to do. From 1867 to 1870 the population of Superior was greatly re-

duced, and lands in the vicinity ceased to be saleable, except for taxes. On September 3, 1867, Hayes purchased at tax sale 17 pieces of land, including that in controversy, paying therefor the total sum of $40.80, of which $14.23 was for the land in question, and expecting to profit only by the premium and interest required to be paid in order to redeem from the sale. He received a tax deed in 1870. The land was about four miles from the inhabited part of Superior. Hayes had never seen it, did not know that it was the land which had been sold on the Porter execution, and did not learn that fact until 1891, when, on hearing that the appellants were investigating, he looked up the papers of Bright & Hayes touching the subject. He paid the taxes on the land from 1867 until June 2, 1883, when, for the consideration of $6,400, as expressed in the deed, he conveyed the land to Edward Buchanan, who purchased for and afterwards conveyed to the Land & River Improvement Company for the expressed consideration of $16,000. The court below dismissed the bill on the grounds that if the appellants had an interest in the land it was of an inchoate and uncertain character, and that in waiting 35 years to sue they had been guilty of such gross laches as to forbid relief, and that in fact they never had title or interest in the land.

In support of the proposition that Porter or the appellants never acquired an interest in the land, it is contended by the appellees: First, that the judgment debtor, Ray, by the contract with the Chesters, had devested himself of all interest in the land before the judgment was rendered; second, that Ray's interest, if he had any, was devested by the corrected tax deed of December 24, 1864, to Kiley; third, that, not having been docketed in the office of the clerk of the circuit court, as required by section 192, c. 120, Laws Wis. 1856, the judgment taken in favor of Porter in the county court did not become a lien on the land; fourth, that, the judgment plaintiff being dead, execution could not be issued by his attorneys after two years from the date of rendition; fifth, that the coroner's sale was a nullity, the bid being made and the certificate taken in the name of the deceased plaintiff; and, sixth, that the attorneys were under no obligation to take a deed in consummation of the sale. These propositions are disputed by counsel for the appellants, who insists (1) that, if a docketing of the judgment in the circuit court was necessary, Bright & Hayes were guilty of such negligence in not having it so docketed as precludes each of them from acquiring an interest in or title to the land, which, if the judgment had been so docketed as to be a lien, equity would have forbidden them to acquire; (2) that Bright & Hayes, having knowledge during the life of Porter that Ray had an interest in the land, which it was their duty to subject to the payment of the judgment, Hayes was precluded in equity from acquiring a title or interest in the land which would impair the interest therein to which the duty related; (3) that the acts of Bright & Hayes relating to issuing the execution and to the sale of the land were capable of being ratified, and were properly ratified by the appellants; (4) that it was the duty of Bright & Hayes to demand a deed for the land after the time for redemption from the sale had expired; (5) that out of the money in their hands collected for Porter on the judgment, Bright & Hayes should have redeemed the land from the tax sale, and prevented the issue of the tax deed of Kiley; (6) that by releasing from the lien of the judgment certain lots in Dubean's addition to the village of Superior, Bright & Hayes must be regarded as having in their hands for the use of Porter the value of the lots; (7) that by reason of the negligence of Bright & Hayes and his own negligence Hayes is estopped from alleging that the tax deed to Kiley impaired the interest of the appellants in the land; (8) that in purchasing the land at tax sale in September, 1870, Hayes committed a fraud against the appellants, which rendered him their constructive trustee for the entire title to the land; and (9) that the Land & River Improvement Company could and did acquire of him no right or title freed from the trust. These propositions are deduced from the assignment of errors. In support of them the following proposition of law is advanced: "Whenever one person is placed in such relation to another by the act or consent of that other or the act of a third person or of the law, or becomes interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated;" or, as otherwise stated: "No party can be permitted to purchase an

interest in property, and hold it for his own benefit, where he has a duty to perform in relation to said property which is inconsistent with the character of the purchase on his own account." The following is quoted from the opinion of the court in Henry v. Raiman, 25 Pa. St. 354: "If a trust reposed [in an attorney] for the purpose of establishing it [the title] might be made available as the means of defeating it the moment it passed into other hands, it would be more injurious than beneficial. No prudent man would repose confidence on such terms, and all men would be deterred from purchasing titles which had ever been in the hands of attorneys or counselors at law. If, after the cause is ended, or the relation of counsel and client is terminated by a sale, or by the death of the client, the counsel employed to defend the title should be permitted to make war upon it by means of the purchase of the hostile claim which he was employed to oppose, no one would be safe in the employment of professional aid." And from the case of Downard v. Hadley, 116 Ind. 131, 18 N. E. 458, the following: "The rule is inflexible * * * that an attorney who is employed to perfect or defend a particular title to land can neither during the continuance of that employment nor after its termination, without disclosing the fact to, and obtaining the consent of, his client, avail himself of information acquired, or which it was his duty to acquire, while in that relation, and purchase an outstanding title for himself, and set it up in hostility to that which he was employed to perfect or defend."

G. W. Hazelton, for appellants.

R. M. La Follett and A. L. Sanborn, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

Without further mention of the name of Bright, the case will be considered as if Hayes had been the sole attorney for Porter, and alone responsible for what was done. It is entirely clear that if he was guilty of wrong towards Porter or the complainants it was a purely constructive and unintended wrong. He was employed to collect a note, not to "perfect or defend a particular title to land;" and down to the entry of the judgment no dereliction of duty is alleged. Whether it was his duty to see that the judgment was properly docketed may be doubtful under the decision in Hesse v. Mann, 40 Wis. 560, but, if he was at fault in that respect, the extent of his liability for the negligence was the injury done, which would be the value of the lien which was lost, if there was no other property subject to levy; and in no event could the liability exceed the amount of the judgment. Such negligence is cause for an action at law, and affords no basis whatever, in principle or by authority, for the assertion that Hayes was precluded from acquiring an interest in or title to the land on which the judgment, by proper docketing, would have been made a lien. There is manifestly the same objection to the kindred proposition that Hayes was precluded from acquiring title to land in which, while Porter was living, he knew Ray had an interest which he ought to have subjected to the payment of the judgment. For that negligence, too, if he was guilty of it, he was liable at law to the extent of the injury done, not exceeding the amount of the judgment; and his right thereafter to deal with land, on which a lien might have been, but was not, established, was in no sense affected. And, indeed, if the judgment had been from the begin-

ning, or had been made, a lien upon the land, the only restriction upon his right to acquire the title or an interest would have been that he must take subject to the lien. His duty, on that supposition, would have forbidden any act which would impair his client's right, but it did not make him "a trustee for the entire title," of whatever value it should become, beyond the amount of the lien. In order to fasten the alleged trust upon the entire title and interest in the land, it was necessary to show that the title was in fact in Porter. Anything short of that, as that there was no lien when there ought to have been one, or that there was a lien which ought to have been made a title, is not enough, for the reason, already stated, that the injury, if attributable to the negligence of Hayes, was remediable at law, or at most could have had the effect only to make the title acquired by Hayes subject to the lien, if lien there was. That the title to the land was never in Porter is clear, even if the lien of the judgment and execution upon the land, the title of Ray, and the validity of the execution be conceded. The doctrine is elementary that there must be a grantee before a grant can take effect, and that a patent to one who is dead passes no title. Galloway v. Finley, 12 Pet. 264. "A patent to a fictitious person is, in legal effect, no more than a declaration that the government thereby conveys the property to no one." Moffat v. U. S., 112 U. S. 24, 5 Sup. Ct. 10. There is nothing to change the rule in the Wisconsin statute, which, when a judgment plaintiff shall have died, authorizes the issue of execution "in the same manner and with like effect as though the person in whose favor the same was rendered was still living." Porter had no title. He had no lien, because a judgment in the county court did not become a lien unless docketed in the circuit court. This we think clear upon the statutory provisions which bear upon the question; but if it were conceded that such docketing was not necessary, and that the judgment became a lien from the date of rendition and entry in the county court, the lien was devested by the tax deed to Kiley. In the absence of proof of irregularities in the tax sale, the corrected deed, though not recorded, was effective to convey title. State v. Winn, 19 Wis. 323; Hewitt v. Week, 59 Wis. 444, 18 N. W. 417. It is urged that Hayes had in his possession money with which he should have redeemed from the sale, and prevented the issue of the deed to Kiley; but that is a clear mistake. Porter's death terminated all agency, and whatever money Hayes was chargeable with, actually or constructively, he held for the use of the executor or administrator of Porter's estate, and had no right to use it in the manner suggested. But, even if it had been within his authority and duty to redeem from the sale, his failure to do it was at most the subject of an action at law for damages, the measure of which could not have exceeded the amount of the judgment, and affords no ground for asserting an estoppel against Hayes to deny the existence of a lien which in fact had been extinguished years before. Aside, therefore, from the doctrine of laches, which we agree was such as ought to bar the suit, there is not, and never has been, ground for the relief sought. The pend-

ing of litigation between other parties over the land afforded these complainants no excuse for delaying to bring their suit. The decree below is affirmed.